464 So.2d 1330 (1985)
Robert LOREI and Nathan B. Stubblefield Foundation D/B/a Wmnf-Fm, Appellants,
v.
Robert SMITH, Chief of Police of the City of Tampa, Appellee.
No. 84-102.
District Court of Appeal of Florida, Second District.
March 15, 1985.
*1331 Gregg D. Thomas and Steven L. Brannock of Holland & Knight, Tampa, for appellants.
Joseph G. Spicola, Jr., City Atty., and Luis G. Figueroa, Asst. City Atty., Tampa, for appellee.
PER CURIAM.
The instant appeal arises from appellants' efforts to gain access to certain records within the custody of appellee, Robert Smith, chief of police of the city of Tampa (department). The request for disclosure was, of course, grounded upon the relevant provisions of chapter 119, Florida Statutes (Supp. 1982), the Public Records Act (Act).
Without detailing the events which occurred prior to and during the pendency of this matter in the trial court, it is sufficient for our purposes to note that appellants' requests were not fulfilled by the department in substantial part upon the claim that the requested data fell within the statutory exemption from disclosure of public records denominated "criminal investigative" and "criminal intelligence" information. §§ 119.011(3)(a), (b), (c), and 119.07(2), Fla. Stat. (1981).
A mandamus proceeding was initiated by appellants in the Hillsborough County Circuit Court which had as its objective two forms of relief. First, appellants sought an order requiring the department to state as to each request whether a public record actually existed and, second, that the trial court conduct an in camera examination to determine if the exemptions claimed by the department were proper. As an adjunct to their request for but as a prelude to an in camera review of the documents, appellants urged the view that discovery would aid the trial court in validating vel non the claimed exemptions. Thus, appellants propounded a set of interrogatories to the department which was responded to by a motion for a protective order. The trial court granted the motion and undertook an in camera review of the documents furnished it by the department. As a result of that review, an order was entered requiring the department to release certain portions of the records. As to other documents, the trial court preliminarily sustained the department's position that they were encompassed within the concept of "criminal intelligence" information. The entry of a final order was delayed, however, pending the court's disposition of appellants' motion seeking additional discovery relative to the remaining "disputed records." That motion was also denied, and a final order was entered granting the *1332 petition but denying the writ as to documents which were disclosed pursuant to a prior order and, in all other respects, denying the petition for writ of mandamus. It found that the "disputed records" were exempt from disclosure as active "criminal intelligence" information enjoying the shelter of section 119.011(3)(c), Florida Statutes (1981). We affirm.
Appellants and the department have different versions of the issue or issues to be resolved by this court. Appellants cast the issues in terms of the trial court's error in (1) failing to require the department to justify the claim of exemption from revelation under section 119.07, (2) interdicting appellants' ability to engage in discovery, and (3) refusing to confirm or deny the existence of the records sought by appellants.[1] The department, on the other hand, confines the issue to the degree of justification required of a public agency once it claims the shield of nondisclosure provided by the Act. The determinative questions we glean from the record are dealt with below.
The legislative objective underlying the creation of chapter 119 was to insure to the people of Florida the right freely to gain access to governmental records. The purpose for such inquiry is immaterial. News-Press Publishing Co. v. Gadd, 388 So.2d 276 (Fla. 2d DCA 1980); Warden v. Bennett, 340 So.2d 977 (Fla. 2d DCA 1976). The breadth of such right is virtually unfettered, save for the statutory exemptions designed to achieve a balance between an informed public and the ability of government to maintain secrecy in the public interest. The exclusive technique adopted by the legislature for the accomplishment of the Act's purposes is judicial intervention. When the demand for disclosure competes with a public interest, asserted to be protected by a statutory exemption, the judiciary's role is to insure that the governmental claim does not defeat the right to disclosure. This court, no less than was true of the Fourth District in Satz ex rel. Broward County v. Gore Newspaper Co., 395 So.2d 1274, 1275 (Fla. 4th DCA 1981), is aware of the "difficulty which one who seeks such information may have in proving the negative ..." once a public agency contends a statutory exemption excuses disclosure. The answer to that dilemma, however, is to be left to the conscientious judgment of our trial courts, and we reject appellants' suggestion that we engraft upon the Act the wholly pragmatic devices of "specificity, separation, and indexing," which the United States Court of Appeals for the District of Columbia Circuit perceived in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir.1973), to be essential to the administration of the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). We believe a Vaughn-type remedy to potential problems arising from an in camera assessment of disputed documents is better left for another day or, perhaps more accurately, the legislature. Cf. Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979). Certainly the matter at hand does not compel a drastic departure from our reliance upon the trial court's capability to undertake and accomplish a qualitatively competent evaluation of the documents before it. The orders entered by the trial court on August 26 and September 22, 1983, following its in camera examination of the so-called "Terrorists Group" files, leave us with no uncertainty that the court engaged in a document selection process wholly compatible with the Act's paramount purposes. Moreover, in disposing of appellants' motion after the in camera examination, the trial court commented in its order dated November 22, 1983, that: "In view of the fact that the court has already carefully reviewed the disputed records, it would seem an exercise in futility to require indexing, itemizing or further discovery in the form of interrogatories."
Turning now to appellants' contention that the trial court incorrectly refused to permit discovery thereby undermining appellants' desire to test the soundness of *1333 the interposed exemptions, we would be justified in ending our inquiry through reliance upon the foregoing aspect of the trial court's November 22 order and according a dispositive effect to that segment in which the following appears: "There is no assertion by [appellant] that [appellee] has withheld any of the disputed records from the court. The court specifically asked counsel if such an assertion or suggestion was involved and received a clear negative response."
Two considerations, however, cause us to comment further. The notion of discovery in a context such as the one at hand may well be appropriate in the circumstance where a good faith belief exists that the public agency may be playing "fast and loose" with the requesting party or the court, once its statutorily delegated authority is activated. Our review of the record, however, does not indicate any behavior on the part of the department upon which to sustain such a belief. In our view, the bulk of the interrogatories is devoted either to the mechanics associated with the department's record maintenance, the internal policies or actions which lead to the development of files, and other areas we do not deem pertinent to the judicial function in reaching the question of exemption from disclosure. The remaining consideration calls for a brief comment stemming from appellants' urging that we embrace the reasoning expressed in Vaughn. In that decision, the District of Columbia Circuit bifurcated a portion of its views into two elements, i.e., detailed justification for claiming exemption and adequate adversary testing. We eschew the applicability of that reasoning to the matter before us. That which generated the Vaughn court's determination that "detailed justification" would not compromise the preservation of secrecy was a "bare bones" affidavit furnished to the trial court containing only the affiant's conclusions and opinions that the requested documents were excluded by exemption from disclosure. The second Vaughn element, which we do not import into the Act's implementation, "adequate adversary testing," was inspired by the burden FOIA imposes upon the federal judiciary. Indeed, the Vaughn court went so far as to suggest in disputed FOIA cases that the lower federal courts employ a special master whose function would be to assume "the burden of examining and evaluating voluminous documents that currently falls on the trial judge." We find no need, and certainly none from the documents we have examined, to concur in appellants' position that we follow Vaughn. A sharp, volumetric contrast exists between that which our trial courts face under the Act and that confronting the federal courts under FOIA. It is for that reason that we cannot subscribe to appellants' Vaughn-based contentions.
Moreover, it is not our role to disturb a trial court's exercise of discretion in matters associated with pretrial discovery in the absence of an evident abuse of that power. Orlowitz v. Orlowitz, 199 So.2d 97 (Fla. 1967). We find no abuse in this case.
Affirmed.
OTT, A.C.J., and DANAHY, J., and BOARDMAN, EDWARD F., (Ret.) J., concur.
NOTES
[1] Although we do not condone public agency silence when confronted with a chapter 119 request, this last issue raised by appellants is moot in light of the data furnished the trial court for its in camera examination.