Mr. John Fenn Foster Crossroads Suite 219 1897 Palm Beach Lakes Boulevard West Palm Beach, Florida 33409
Dear Mr. Foster:
You ask substantially the following question:
Is the South Florida Fair and Palm Beach County Expositions, Inc., created pursuant to Part I, Chapter 616, Florida Statutes, subject to the provisions of Chapter 119, Florida Statutes, the Public Records Law?
In sum:
The South Florida Fair and Palm Beach County Expositions, Inc., created pursuant to Part I, Chapter 616, Florida Statutes, is subject to the provisions of Chapter 119, Florida Statutes, the Public Records Law.
Chapter 119, Florida Statutes, Florida's Public Records Law, requires that records made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making such records confidential.[1] "Agency" is defined for purposes of Chapter 119 to include private corporations acting on behalf of any public agency.[2]
There is no single factor that is controlling in determining whether a private entity is "acting on behalf of" a public agency; instead the courts have adopted a totality of factors approach. As set forth by The Supreme Court of Florida in News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc.,[3]
the analysis involves consideration of the following factors to be used in determining whether a private organization is an "agency" for purposes of Chapter 119:
1) Creation — did the public agency play any part in the creation of the private entity? 2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity? 3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment? 4) Decision-making Process — does the private entity play an integral part in the public agency's decision-making process? 5) Governmental Function — is the private entity exercising a governmental function? 6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?
Application of the above test in Schwab led the Court to conclude that an architectural firm under contract with a school board to provide architectural services associated with the construction of school facilities was not "acting on behalf of" the school board. Therefore, the architectural firm was not subject to Chapter 119, Florida Statutes.
In developing the totality test, the Schwab Court relied on several earlier district court opinions. One of these opinions was Schwartzman v. Merritt Island Volunteer Fire Department,[4] in which the district court held that a nonprofit volunteer fire department was subject to Chapter 119. The court based its decision on the fact that the fire department had been given stewardship over firefighting, that it conducted its activities on public property, and that it was funded in part by public moneys.
This office has also applied the totality test in determining whether a private organization is subject to the Public Records Law. For example, in Attorney General Opinion 92-37, this office considered whether a performing arts center created as a private not-for-profit corporation for the cultural and educational enhancement of the general public was subject to Chapter 119. Although the center was created by private individuals, this office determined that the city and county could exercise considerable control over the corporation by virtue of the fact that seven of the fifteen members on the center's board of trustees were city or county officials or were appointed by the mayor. In addition the center operated a publicly owned facility and performed a public function. Although the lease provided that the center operated the facilities as an independent contractor, this office noted that the center was authorized to request and had received some public funding.
Therefore, this office concluded that inasmuch as the center, while not created by a public agency, was governed by a board of trustees composed of a number of public officials or appointees of public officials, was using public property to carry out its goals and was performing a function that the city had recognized as constituting a governmental function, it was an "agency" as that term is defined for purposes of Chapter 119.[5]
The South Florida Fair and Palm Beach County Expositions, Inc. (Fair) was established pursuant to Chapter 616, Florida Statutes. Section 616.01(1), Florida Statutes, authorizes "[t]wenty-five or more persons who are residents and qualified electors of the county wherein the fair is to be located, wishing to form an association not for profit for the purpose of conducting and operating public fairs or expositions," to incorporate as provided therein.[6]
While Part I, Chapter 616, Florida Statutes, does not create the fair associations but rather authorizes their creation, such associations must be established for the purpose of conducting and operating public fairs or expositions.[7] The charter for the Fair was, in accordance with the provisions of Chapter 616, submitted to and approved by the Department of Agriculture and Consumer Services (department), the Palm Beach County Board of County Commissioners and the circuit court.[8]
Section 616.11, Florida Statutes, authorizes the state, or an agency thereof, and the counties or municipalities to make donations of land or contributions of property, money or services to the fair associations. This office has been advised that Palm Beach County transferred land to the Fair for its use.[9] In addition, the Fair has received public funds from the department and from the Tourist Development Council of Palm Beach County.
Section 616.07, Florida Statutes, declares that "all money and property of the association shall, except for the payment of its just debts and liabilities, be and remain perpetually public property, administered by the association as trustee. . . ." Upon dissolution of an association, any public property or funds remaining are to be distributed to any county or municipality within the county unless such property has been contributed to a county or municipality, then the property shall be reconveyed to the municipality or county making the contribution.[10] Thus, it appears that the Fair is operating on public property and has received public funding.
As noted supra, the Fair is incorporated for the sole purpose of conducting and operating public fairs or expositions. Chapter 616, Florida Statutes, however, regulates how fair associations may carry out that function. No public fair or exposition may be conducted by a fair association without a permit from the department.[11] Section 616.17, Florida Statutes, prescribes minimum exhibits for public fairs or expositions. A fair association may not operate more than one public fair or exposition during a calendar year and if an association does not conduct a fair or exposition within three calendar years, the association "shall, upon the recommendation of the department, have its charter revoked by the court granting the charter."[12]
An examination of the bylaws of the Fair indicate that some of the members of the board of directors are public officials. Article III, section 1 of the bylaws provides: The overall surveillance of the operation of the Corporation shall be in a Board of Directors of twenty-four (24) Regular Directors, no more than twenty (20) Directors-At-Large, the Past Presidents of the Corporation and ex officio members who shall be the Commissioner of Agriculture, State of Florida, The Chairman of the Palm Beach County Commission, the Superintendent of Public Instruction of Palm Beach County and the Extension Directors of Palm Beach, Broward, Hendry, Okeechobee, and Martin Counties. . . .
This office has been advised that the Fair has referred to itself as a "branch of the Department of Agriculture, Bureau of Fairs and Expositions,"[13] or as a "governmental entity"[14] and as carrying out an "essential governmental function."[15] Such comments would appear to reflect the Fair's own perception of its relationship with the department. Section 616.260, Florida Statutes, states that the projects of the State Fair Authority constitute "essential governmental purposes." Section 616.19, Florida Statutes, provides that a public fair or exposition created pursuant to Chapter 616 shall be recognized by the state "as equal in dignity to the Florida State Fair and as fully recognized as the Florida State Fair."
Accordingly, the Legislature has declared holding of a public fair to constitute an essential governmental function. In carrying out the same type of function in the manner authorized by the Legislature, albeit in a smaller geographic area, a fair association would also appear to be performing a government function.[16]
In light of the above, it appears that the Fair is an "agency" as that term is defined for purposes of Chapter 119, Florida Statutes, and is thus subject to the requirements of that law. While created by private individuals under the authority granted by statute, the board of directors is composed of several public officials. The association is subject to the regulations of the Department of Agriculture and Consumer Services in carrying out its operations which are conducted on public property that it holds as trustee. It is performing a function that has been legislatively declared to be an essential governmental function.
Therefore, based upon the facts presented to this office as applied to the "totality of factors" analysis espoused by the Supreme Court in News and Sun-Sentinel Company v. Schwab, Twitty and Hanser Architectural Group, Inc., supra, I am of the opinion that South Florida Fair and Palm Beach County Expositions, Inc., is an "agency" for purposes of Chapter 119, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 119.011(1), Fla. Stat. (1993), defining "Public records," and Shevin v. Byron, Harless, Schaffer, Reid And Associates, 379 So.2d 633 (Fla. 1980).
[2] Section 119.011(2), Fla. Stat. (1993).
[3] 596 So.2d 1029 (Fla. 1992).
[4] 352 So.2d 1230 (Fla. 4th DCA 1977).
[5] And see, Ops. Att'y Gen. Fla. 94-35 (1994) (Sunshine State One-Call of Florida, Inc., created by statute as not-for-profit organization, governed by board of directors that may include public officials, operating by utilizing, in part, fees paid by public agencies with public funds, and exercising a governmental function, i.e., the protection of the public from injury, is agency for purposes of Ch. 119); 94-32 (1994) (Florida Windstorm Underwriting Association created pursuant to plan as recognized by statute and which carries out a governmental function was subject to Ch. 119).
[6] See, s. 616.001(10), Fla. Stat. (1993), defining "[f]air association" or "association" for purposes of Ch. 616 as "an association not for profit incorporated under this chapter for the purpose of conducting and operating public fairs or expositions."
[7] See, s. 616.01(2), Fla. Stat. (1993), stating that the charter must contain a provision that the association is incorporated for the sole purpose of conducting and operating public fairs or expositions. While Chapter 616 was amended in 1993 and the chapter divided into parts, Part I containing general provisions and Part III addressing the Florida State Fair Authority, many of the provisions contained in Parts I and III remained substantially unchanged. An examination of the legislative history surrounding the enactment of Chapter 93-168, Laws of Florida, failed to reveal any clear expression of legislative intent. See, e.g., Senate Staff Analysis and Economic Impact Statement on SB 1640, dated March 16, 1993, stating that
It is not clear what, if any, change would be brought about by the added language providing that the [State Fair] Authority is "subject to the jurisdiction of the state." With the exception of federal agencies and instrumentalities, and matters preempted by federal law, all persons, things and activities within the territorial boundaries of a state are presumed to be under or subject to the jurisdiction of the state.
[8] See, ss. 616.01 and 616.03, Fla. Stat. (1993).
[9] From the information provided to this office, it appears that in 1955, Palm Beach County deeded approximately fifteen acres of property to the Fair for county fair purposes. In 1957 this land was apparently transferred back to the county and a parcel of some ninety-five aces of land that is the current location of the Fair was conveyed to the Fair by the county.
[10] Section 616.07, Fla. Stat. (1993). The county retains some control over the lands deeded to the Fair. The land may only be used for county fair purposes. No part of the deeded land may be conveyed by the Fair without the written consent of the county. Failure to comply with these restrictions will result in the reversion of the land to the county. This office has been advised that on at least one occasion the Fair has requested the county to release the restrictions imposed for a portion of the land which would then be sold with the proceeds being used to acquire new land and to reduce the debt of the Fair.
[11] Section 616.15, Fla. Stat. (1993).
[12] Section 616.14(2), Fla. Stat. (1993).
[13] Letter from Mr. John Fenn Foster, Attorney for the South Florida Fair and Palm Beach County Expositions, Inc., to Mr. Richard Wheeling, Lake Worth Drainage District, dated December 27, 1990.
[14] Letters from Mr. John Fenn Foster, Attorney for the South Florida Fair and Palm Beach County Expositions, Inc., to Mr. Gordon P. Selfridge, Assistant Palm Beach County Attorney, dated March 31, 1993, and to Mr. Joe Mount, Palm Beach County Attorney, dated August 13, 1993.
[15] Letter from Mr. John Fenn Foster to Mr. Gordon P. Selfridge, supra.
[16] This office has been advised that the Department of Revenue has advised the Fair that it may not utilize the tax exemption provided to the State Fair Authority even though the provisions of section 616.19, Florida Statutes, provide that it is equal in dignity to the State Fair Authority. Unlike the open government laws, exemptions from taxes are to be narrowly construed. The Public Records Law, however, is to be liberally construed in favor of open government. See, Seminole County v. Wood, 512 So.2d 1000
(Fla. 5th DCA 1987), reviewed denied, 520 So.2d 586 (Fla. 1988). And see, Lorei v. Smith, 464 So.2d 1330 (Fla. 2d DCA 1985), review denied, 475 So.2d 695 (Fla 1985), stating that the public policy favoring open records must be given the broadest possible expression.