582 So.2d 730 (1991)
SARASOTA HERALD-TRIBUNE COMPANY, a Florida Corporation, Appellant,
v.
COMMUNITY HEALTH CORPORATION, INC., a Florida Nonprofit Corporation, and Edward W. Houck, Ph.D., As Records Custodian of Community Health Corporation, a Florida Nonprofit Corporation, Appellees.
No. 90-01804.
District Court of Appeal of Florida, Second District.
July 5, 1991.
*731 Gregg D. Thomas, Steven L. Brannock, and Carol J. LoCicero of Holland & Knight, Tampa, and George H. Freeman and Deborah R. Linfield of The New York Times Co., New York City, for appellant.
A. Lamar Matthews, Jr., Theodore C. Eastmoore, and Arthur S. Hardy of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellees.
ALTENBERND, Judge.
The dispositive issue in this case is whether a not-for-profit corporation expressly created to further the interests of a public hospital and to perform various important functions previously performed by the public hospital is a "business entity acting on behalf of any public agency" for purposes of the Florida Public Records Act. § 119.011(2), Fla. Stat. (1989). Although we are inclined to believe that an exemption for such a corporation from aspects of the public records act might be appropriate, we have no authority to create a statutory exemption for this corporation. Douglas v. Michel, 410 So.2d 936 (Fla. 5th DCA 1982), certified questions answered, 464 So.2d 545 (Fla. 1985). Accordingly, with some reluctance we hold that Community Health Corporation, Inc., concerning at least some of its functions, is a business entity acting on behalf of the Sarasota County Public Hospital Board.
The Sarasota County Public Hospital Board (the Board) is a public agency which was created by the legislature in 1949 to provide health care services in the Sarasota area. It currently operates Sarasota Memorial Hospital, a public hospital with more than 800 beds. Like other public hospitals, Sarasota Memorial Hospital has found it increasingly difficult to operate successfully in a region where there are a number of competing private hospitals that have a lesser commitment to indigent health care.
In the mid-1980s, the Board rejected the recommendation of a private consultant who suggested that the Board terminate its governmental status and convert to a private, not-for-profit corporation. Instead, the Board established an ad hoc committee to consider methods to successfully adapt the public institution to the current, competitive market. After several public meetings, the committee recommended that the Board arrange for the creation of a separate, not-for-profit corporation to support the Board's activities.
In 1986, the legislative delegation of Sarasota County introduced a bill to amend the special act which had established the Board. The legislature enacted the proposal. Ch. 86-373, Laws of Fla. The amendment authorizes the Board "to establish or support nonaffiliated, not-for-profit corporations *732 which operate primarily within the hospital district and which have as their purposes the furtherance of the hospital board's provision for the health care needs of the people of the hospital district... ." Ch. 86-373, § 4, Laws of Fla. The act also provides that "[t]he establishment, operation, or support of a ... nonaffiliated, not-for-profit corporation is hereby found and declared to be a public purpose and necessary for the preservation of the public health... ." Ch. 86-373, § 4, Laws of Fla. The special act does not contain any exemption from the public records act for such a nonaffiliated, not-for-profit corporation.
Soon after the legislature enacted this amendment, Community Health Corporation was created. Its articles of incorporation specify that it exists for the purpose of "further[ing] the interests of the Sarasota County Public Hospital Board and thereby those of the residents of Sarasota County in maintaining and enhancing the financial well-being of [the Board]." Although the Board does not legally control the corporation, the corporation's articles specify that two of its five directors must be the chairman of the Hospital Board and the chief executive officer of Sarasota Memorial Hospital. A third member must be the chairman of the board of the Sarasota Memorial Hospital Foundation, Inc., a charitable corporation created to assist the Board. These three directors are joined by two more directors, who are elected by the current directors of the corporation. Thus, it is fair to suggest that the Board can substantially influence policy and financial decisions of the corporation. If the corporation is ever dissolved, its assets must be transferred to the Board or to the Foundation.
Since its creation, Community Health Corporation has been involved in the development of a hospice facility, the construction and management of a nursing home, the formation of a preferred provider organization (PPO), and other healthcare activities. The corporation is now operating a magnetic resonance imager (MRI) inside the hospital. The Board has given the corporation a favorable lease of land adjacent to Sarasota Memorial Hospital, on which the corporation built a medical office building. The corporation has received grants, amounting to hundreds of thousands of dollars, from the Board. The Board has extended a $3,000,000 noncollateralized loan to the corporation to open and operate a cardiac catheterization laboratory.
In October 1989, the Sarasota Herald-Tribune submitted a written public records request to Edward W. Houck, as records custodian of Community Health Corporation.[1] The corporation declined the request on grounds that it was a private corporation and was not an "agency" subject to the public records act. § 119.011(2), Fla. Stat. (1989).[2] Thereafter, the Herald-Tribune filed a petition for writ of mandamus in the trial court seeking access to the records. The trial court conducted a thorough evidentiary hearing and prepared an extensive final judgment with findings of fact and conclusions of law that have *733 greatly assisted this court in its review. The trial court found that Community Health Corporation was not acting on behalf of the Board and denied the petition.
We find no fault with the trial court's findings of fact. We conclude, however, that the trial court misapplied our decision in Fox v. News-Press Publishing Co., 545 So.2d 941 (Fla. 2d DCA 1989), when it decided that the corporation was not acting on behalf of the Board. Recently, we have affirmed a trial court that determined a corporation to be acting on behalf of a governmental agency under a somewhat similar set of facts. PHH Mental Health Services, Inc. v. The New York Times Co. d/b/a The Ledger, 582 So.2d 1191 (Fla. 2d DCA 1991).
The public records act does not define the type of conduct which is essential for a private business entity to become an "agency" acting "on behalf of" a public agency. It also does not indicate what records of a private corporation become public if it acts on behalf of an agency. In the absence of a statutory exemption or a competing right of privacy, however, the courts have liberally interpreted this act in favor of public access. Michel, 464 So.2d at 546; Lorei v. Smith, 464 So.2d 1330 (Fla. 2d DCA), review denied, 475 So.2d 695 (Fla. 1985).
In Fox, this court followed the lead of the Fourth District and adopted a "totality of factors" test to determine whether a private business entity is acting on behalf of a public agency. See Schwartzman v. Merritt Island Volunteer Fire Dep't, 352 So.2d 1230 (Fla. 4th DCA 1977), cert. denied, 358 So.2d 132 (Fla. 1978). Unfortunately, it is not easy for an appellate court to isolate a list of factors which the trial courts can readily apply in reaching a decision on this issue in all cases. The factors and circumstances of each case seem to be somewhat distinct. Thus, to the extent that we believe the trial court misapplied Fox, we can sympathize with that court's difficulty.
The trial court was most impressed with four factors. First, it concluded that none of the functions performed by Community Health Corporation were "essential" governmental functions. In Fox, we had observed that the towing company was "clearly performing what is essentially a governmental function, i.e., the removal of wrecked and abandoned automobiles from public streets and property." Fox, 545 So.2d at 943. While performing an essential governmental service certainly may indicate a "significant level of involvement by the public entity" within the private corporation, we believe the trial court overemphasized this factor. Id. Clearly some, and perhaps all, of the functions performed by Community Health Corporation serve valid public purposes and are functions that a public hospital authority could itself perform. The issue is more a matter of whether the government could perform the function itself  not whether it is essential that the government perform the function.
Community Hospital Corporation argues that it is not acting on behalf of the Board because it is performing activities which the Board could not constitutionally perform. See Art. VII, § 10, Fla. Const. At least for many of the corporation's activities, it is more accurate to suggest that the Board could not constitutionally utilize a specific structure or method to perform the relevant function. The fact that the corporation may be using money obtained from the Board to engage in activities for which the Board could not constitutionally use the same means does not seem to be a reason to limit public access. If anything, it might be a reason to allow public access.
Second, the trial court was impressed that the Board did not control day-to-day activities within the corporation. Unlike the city of Fort Myers in Fox, the Board does not control the corporation's prices, insurance, hours, or other details. This is clearly a factor that weighs in favor of the corporation. Nevertheless, we conclude that this factor does not overcome other factors.
Third, the trial court gave great weight to the inability of the Board to control, as compared to influence, the corporation's board of directors. Again, we agree that this factor weighs in favor of the corporation but does not overcome other factors.
*734 Finally, the trial court was persuaded that the legislature intended to exempt Community Health Corporation from broad public disclosure requirements. In April 1986, the local legislative delegation adopted a resolution which states that the Board shall not support such a corporation unless the corporation submits an annual audited report on its activities or services and conducts quarterly public meetings of its board of directors. It appears possible that the local delegation intended this resolution to provide adequate public access to the corporation, and that they did not expect the corporation to be otherwise subject to the public records act. This resolution by the local delegation, however, is not a legislative enactment and we cannot employ it to create an exemption not adopted by the legislature as a whole.
Without suggesting that the following factors are always applicable or dispositive, we reverse the trial court based upon these considerations:
1) Creation and Existence. The Board clearly played a major role in the creation of this corporation. But for the Board, this corporation would not exist.
2) Funding and Capitalization. The Board has provided substantial funds, capital and credit to the corporation. While merely providing money to a corporation, especially in consideration for goods or services, is not an important factor in this analysis, providing a substantial share of the capitalization of the corporation is important. We are also impressed by the fact that the Board appears simply to have transferred to Community Health Corporation its business of operating the MRI inside the hospital.
3) Goals and Purposes. While overly simplistic, if one asks on whose behalf is Community Health Corporation functioning, it is difficult to conclude that the Board is not the primary and most immediate beneficiary. This is not a corporation with stockholders who expect a profit. It is not accruing assets for some private person. In the final analysis, its primary goal is to help the Board and the citizens served by the Board. This is a superlative goal, but it is also one that supports public access.
4) Ownership. Although this is a not-for-profit corporation, we are impressed by the fact that upon dissolution the corporation's assets would transfer either to the Board or to a charitable organization that supports the Board. From any practical perspective, the Board has a substantial financial interest in Community Health Corporation.
5) Interdependence. While the Board cannot guarantee its control of the corporation, it is assured that the corporation will not compete with it by virtue of the corporation's bylaws. The corporation's tax return describes it as "an outgrowth" of the Board. The ad hoc committee described the proposed corporation as a "side-by-side" corporation. Indeed, the two entities are sufficiently aligned that one law firm can ethically represent both.
In holding that Community Health Corporation is subject to the public records act because it is acting on behalf of the Board, we emphasize that we are not ruling that all of its records are public.[3] Some of its records may be subject to statutory exemptions or to valid claims of privacy. Likewise, we cannot rule that every function of this corporation is performed on behalf of the Board. While we have seen little evidence of functions that might fall outside the realm of public access, the trial court is free to review specific activities of the corporation on remand to determine whether they involve nongovernmental functions which fall outside the public disclosure requirements.
Reversed and remanded.
SCHEB, A.C.J., and FRANK, J., concur.
NOTES
[1] The Herald-Tribune requested access to documents and records reflecting Community Health Corporation's receipt of property from any unit of government, contracts or agreements entered into by it and any records reflecting disbursements made by it or on its behalf as well as financial accountings and reports submitted by it to the hospital or other public entities. The Herald-Tribune specifically requested records relating to the cardiac catheterization facilities, Sarasota Healthplex, MRI Partners, Ltd., and Hillhaven Convalescent Center of Sarasota.
[2] For purposes of the Florida Public Records Act, "agency" is defined as:

[A]ny state, county, district, authority, or municipal officer, department, division, board bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
§ 119.011(2), Fla. Stat. (1989). That definition should be read in conjunction with section 119.01(1), Florida Statutes (1987), which establishes that:
It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.
Finally, section 119.07(3), Florida Statutes (1989), provides for the inspection of public records except where exempted by general or special law.
[3] In 1991 the legislature enacted a law exempting the governing board of a public hospital from certain public disclosure requirements. Ch. 91-219, Laws of Fla. (corresponds to Fla. H.B. 1719 (1991)). We render no opinion as to the applicability of that exemption to this case.