596 So.2d 1029 (1992)
NEWS AND SUN-SENTINEL COMPANY, et al., Petitioners,
v.
SCHWAB, TWITTY & HANSER ARCHITECTURAL GROUP, INC., etc., et al., Respondents.
No. 77131.
Supreme Court of Florida.
March 5, 1992.
Rehearing Denied May 12, 1992.
*1030 Wilton L. Strickland of Ferrero, Middlebrooks & Strickland, P.A., Fort Lauderdale, for petitioner.
Donald J. Freeman of Bailey, Fishman, Freeman & Ferrin, West Palm Beach, and Louis R. McBane of Boose, Casey, Ciklin, McBane and O'Connell, West Palm Beach, for respondent.
KOGAN, Justice.
We have for review News & Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, 570 So.2d 1095 (Fla. 4th DCA 1990), in which the following question was certified as being of great public importance:[1]
Does a corporation act on behalf of a public agency when hired by a county to perform professional architectural services for the construction of a school so as to be subject to the provisions of Chapter 119 of the Florida Statutes?
570 So.2d at 1096. In the context of this case, we answer in the negative and approve the decision below.
Respondent, Schwab, Twitty & Hanser Architectural Group, Inc. (the architectural firm) is a private corporation that contracted with Palm Beach County School Board to provide architectural services associated with the construction of certain school building facilities to be built by the school board. The architectural firm was paid for its services by the school board pursuant to the contracts.
On April 12, 1990, a reporter for petitioner, News and Sun-Sentinel Co. requested, pursuant to chapter 119, Florida Statutes (1989), that he be allowed to inspect all files in the firm's possession that pertain to a number of school board projects. The firm refused the request, taking the position that it was not an agency within the definition of that term as set forth in section *1031 119.011(2). News and Sun-Sentinel filed a petition for production of documents pursuant to chapter 119 with a demand for immediate hearing. After a hearing, the trial court ruled that the architectural firm was not an agency within the meaning of chapter 119 and therefore did not have to produce the records.
The district court affirmed. Reasoning that the architects did not participate in the school board's decision-making process, the court held that "the architectural firm was not an agency `acting on behalf of' a public agency." 570 So.2d at 1096. However, the court certified the above question, noting that it was troubled by the wording of section 119.011(2) which provides:
"Agency" means any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.

Id. The district court's apprehension is understandable, in light of the fact that the statute provides no clear criteria for determining when a private entity is "acting on behalf of" a public agency.
The majority of district courts to address the issue of when a private entity under contract with a public agency falls within the purview of the Public Records Act has looked to a number of factors which indicate a significant level of involvement by the public agency. See, e.g., Sarasota Herald-Tribune Co. v. Community Health Corp., Inc., 582 So.2d 730 (Fla.2d DCA 1991); Fox v. News-Press Publishing Co., Inc., 545 So.2d 941 (Fla.2d DCA 1989); Parsons & Whittemore, Inc. v. Metropolitan Dade County, 429 So.2d 343, (Fla.3d DCA 1983); Schwartzman v. Merritt Island, 352 So.2d 1230 (Fla. 4th DCA 1977), cert. denied, 358 So.2d 132 (Fla. 1978). However, rather than relying on any one of these factors, the courts generally have made the determination based on the "totality of factors." See Sarasota Herald-Tribune, 582 So.2d at 733; Fox, 545 So.2d at 943; Schwartzman, 352 So.2d at 1232. The factors considered include, but are not limited to: 1) the level of public funding; 2) commingling of funds; 3) whether the activity was conducted on publicly owned property; 4) whether services contracted for are an integral part of the public agency's chosen decision-making process; 5) whether the private entity is performing a governmental function or a function which the public agency otherwise would perform; 6) the extent of the public agency's involvement with, regulation of, or control over the private entity; 7) whether the private entity was created by the public agency; 8) whether the public agency has a substantial financial interest in the private entity; and 9) for who's benefit the private entity is functioning. See, e.g., Sarasota Herald-Tribune, 582 So.2d at 733; Fox, 545 So.2d at 943; Parsons & Whittemore, 429 So.2d at 345-46; Schwartzman, 352 So.2d at 1232.
As noted above, the term "agency," as used in Florida's Public Records Act, is defined broadly to include private entities "acting on behalf of any public agency." § 119.011(2). This broad definition serves to ensure that a public agency cannot avoid disclosure under the Act by contractually delegating to a private entity that which otherwise would be an agency responsibility. See Parsons & Whittemore, 429 So.2d at 346; Byron, Harless, Schaffer, Reid & Assocs. v. State ex rel. Schellenberg, 360 So.2d 83 (Fla. 1st DCA 1978), quashed on other grounds, 379 So.2d 633 (Fla. 1980).
We reject petitioners' contention that a private corporation acts "on behalf of" a public agency merely by entering into a contract to provide professional services to the agency. See Parsons & Whittemore, 429 So.2d at 346 (engineering and construction firms that contracted with county to construct, manage and operate solid waste facility did not act "on behalf of" county merely by entering into business contracts). We find the "totality of factors" test utilized by the district courts a sound approach for determining whether a private entity is subject to the Public Records Act. This approach provides guidance *1032 for making such a determination, yet recognizes the unique circumstances present in each case. Accordingly, we adopt the totality of factors approach. However, we note that because the relevant factors and circumstances vary from case to case, the above-listed factors are not intended to be all-inclusive.
The district court below appears to have considered only the fact that "the architects did not participate in the school district's process to decide whether schools should be built." 570 So.2d at 1095-96. The trial court, on the other hand, expressly considered and based its determination on the factors set forth in Parsons & Whittemore and Schwartzman. The trial court made the following findings relative to those factors:
b) That the providing of educational facilities by the School Board is a governmental function but that the architectural services for designing is not a governmental function.
c) That the School Board's building program is funded by the government but that, the governmental entity, in this case the Palm Beach County School Board, does not regulate the architectural activity.
d) The School Board may generally say how it wants to approve the appearance of the buildings but that the architectural responsibility is a professional one and it is not a governmental function.
e) That the particular entity in question in this case, SCHWAB, TWITTY & HANSER ARCHITECTURAL GROUP, INC., has not been created by a governmental entity, i.e., the School Board, to perform a governmental function.
Our review of the following relevant factors supports the the determination that the architectural firm was not acting on behalf of the school board for purposes of the Public Records Act.
Creation: The school board clearly played no part in the creation of the architectural firm.
Funding: While the firm received public funds, the funds were given in consideration for professional services rendered. Therefore, the public funds received by the firm were no different than those received from any other client. See Sarasota Herald-Tribune, 582 So.2d at 734 (merely providing money to private entity in consideration for goods or services is not an important factor in analysis).
Regulation: The school board does not regulate or otherwise control the respondent's professional activity or judgment. In fact, under the terms of the contract, it appears the firm was to act as a neutral third party, interpreting the construction contract and acting as the judge of performance by both the school board and the contractor.
Decision-making Process: The services contracted for, professional architectural services, were not an integral part of the school board's decision-making process. The firm merely provided professional expertise. There was no delegation of or participation in any aspect of the school board's decision-making process. Cf. Byron, Harless, 360 So.2d 83 (firm of consultants hired to recommend persons for the position of managing director of a public authority is a business entity "acting on behalf of" a public agency).
Governmental Function: As the trial court concluded, it cannot be said that the firm was performing a governmental function. Cf. Fox, 545 So.2d at 943 (under terms of contract towing company was performing a governmental function). Moreover, there is no evidence that the school board delegated responsibility that it otherwise would have assumed. See Sarasota Herald-Tribune, 582 So.2d at 733 (functions performed by private corporation served valid public purposes and were functions that public hospital authority could have performed).
Goals: Likewise, it cannot be said that the architectural firm was functioning for the benefit of the school board or the public. While the school board received a benefit from the contract, the firm's motivation for rendering professional services pursuant to the contract was clearly to receive compensation, not to provide a public *1033 service. Cf. Sarasota Herald-Tribune, 582 So.2d at 734 (private corporation's primary goal was to help public agency and citizens served by agency).
Based on the totality of the factors relevant in this case, we answer the certified question in the negative and hold that an architectural firm, such as the respondent, that contracts to provide professional services for the construction of a school is not acting on behalf of a public agency so as to be subject to the provisions of chapter 119. Accordingly, the decision below is approved.
It is so ordered.
SHAW, C.J., and McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I dissent because I am unable to distinguish the professional services rendered by the consulting firm in Shevin v. Byron, Harless, Schaffer, Reid & Associates, 379 So.2d 633, 640 (Fla. 1980), to the Jacksonville Electric Authority from the services rendered by the architectural firm of Schwab, Twitty & Hanser to the Palm Beach County School Board in this case. In Byron, Harless, we explained what the legislature intended to be included as public records under chapter 119. We stated:
In enacting section 119.011(1), the legislature broadened the class of public records. Notwithstanding the expansion of the concept, however, the legislature based its policy determination on the term "public records." That definition limits public information to those materials which constitute records  that is, materials that have been prepared with the intent of perpetuating or formalizing knowledge.
To give content to the public records law which is consistent with the most common understanding of the term "record," we hold that a public record, for purposes of section 119.011(1), is any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type. To be contrasted with "public records" are materials prepared as drafts or notes, which constitute mere precursors of governmental "records" and are not, in themselves, intended as final evidence of the knowledge to be recorded. Matters which obviously would not be public records are rough drafts, notes to be used in preparing some other documentary material, and tapes or notes taken by a secretary as dictation. Inter-office memoranda and intra-office memoranda communicating information from one public employee to another or merely prepared for filing, even though not a part of an agency's later, formal public product, would nonetheless constitute public records inasmuch as they supply the final evidence of knowledge obtained in connection with the transaction of official business.
Id. at 640 (footnote omitted).
In Byron, Harless, we held that "the letters, memoranda, resumes, and travel vouchers made or received" by Byron, Harless, a consulting firm under contract to evaluate management personnel for the Jacksonville Electric Authority, "were intended to formalize the information contained in them." Id. at 640-41. We held that those "materials constitute[d] public records under section 119.011(1)," but noted that "[t]he handwritten notes of the consultant, however, made during or shortly after his interviews with job prospects, [were] merely preliminary materials intended to aid the consultant when he later formalized the knowledge gained during the interviews." Id. at 641. In my view, an architectural firm providing professional services for the construction of a public school clearly is acting on behalf of a public agency and is subject to the provisions of chapter 119 in accordance with the definition of a public record which we set forth in Byron, Harless. I find it unreasonable and illogical to say that architectural services for the construction of a public building, paid for with public funds, is neither a governmental function nor an integral part of the school board's decision-making *1034 process. The Court should hold that Byron, Harless controls.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.