Ms. Pamela K. Akin Tampa City Attorney 315 East Kennedy Boulevard City Hall, Fifth Floor Tampa, Florida 33602
Dear Ms. Akin:
You ask substantially the following question:
Is the Tampa Bay Performing Arts Center, Inc., which under a lease operates the performing arts center of the City of Tampa, subject to the Public Records Law, Chapter 119, Florida Statutes?
In sum, I am of the opinion that:
The Tampa Bay Performing Arts Center, Inc., which is governed by a board of trustees composed of a number of city and county officials or appointees of the Mayor of the City of Tampa, which is utilizing city property in carrying out its goals to benefit the public, and which is performing a governmental function, is an agency for purposes of Chapter 119, Florida Statutes, and is, therefore, subject to the Public Records Law.
Public Records Law, Chapter 119, Florida Statutes, requires that records made or received in connection with the transaction of official business by any agency must be open for inspection in the absence of a statute exempting or making such records confidential.[1] "Agency" is expressly defined for purposes of the act to include private corporations acting on behalf of any public agency.[2]
Merely contracting with a public agency does not, in and of itself, subject a private corporation to the requirements of Chapter 119, Florida Statutes.[3] The courts instead have adopted a totality of factors approach in determining whether a private entity is "acting on behalf of a public agency."[4] This approach was recently affirmed by The Supreme Court of Florida in News andSun-Sentinel Company v. Schwab, Twitty Hanser ArchitecturalGroup, Inc.[5]
In Schwab, the Supreme Court was asked to determine whether an architectural firm under contract with a school board to provide architectural services associated with the construction of school facilities was subject to the Public Records Law. The Court set forth a list of factors to be considered in making such a determination:
"1) Creation — did the public agency play any part in the creation of the private entity? 2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity? 3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment? 4) Decision-making process — does the private entity play an integral part in the public agency's decision-making process? 5) Governmental function — is the private entity exercising a governmental function? 6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?"
While not any one factor would subject an entity to Chapter 119, Florida Statutes, the factors viewed together might well require a private entity to comply with the requirements of the Public Records Law. Applying such a "totality" test, the Court in Schwab
held that the architectural firm was not acting on behalf of the school board. The Court based its decision on its findings that
"1) The school board played no part in the creation of the private firm, 2) The public funds were given in consideration of the professional services rendered and were no different than those received from any other client, 3) The school board did not regulate or otherwise control the firm's activities or judgment, 4) The firm did not participate in the school board's decision-making process, 5) The firm was not performing a governmental function, and 6) The firm was not functioning for the benefit of the school board or the public; rather the firm's motivation was to receive compensation, not to provide a public service."
In developing the totality test, the Court relied on several earlier district court opinions. For example, in Schwartzman v.Merritt Island Volunteer Fire Department,[6] The Fourth District Court of Appeal held that a private nonprofit volunteer fire department, which had been given stewardship over firefighting, which conducted its activities on county owned property, and which was funded in part by public money, was an agency and its membership files, minutes of its meetings and charitable activities were subject to disclosure.
More recently, the Second District Court of Appeal in SarasotaHerald-Tribune Company v. Community Health Corporation, Inc.,[7]
held that a not-for-profit corporation created by a public hospital district to further the provision of health care needs of the people of the district, was an "agency" subject to the requirements of Chapter 119, Florida Statutes.
The court reviewed a number of factors, relating to the creation and existence of the corporation: its funding and capitalization, its goals and purposes, ownership, and interdependence. The public hospital, although not controlling the corporation, had several members on the corporation's governing board, and thus could "substantially influence policy and financial decisions of the corporation." If the corporation was dissolved, its assets were to be transferred either to the public hospital or to a charitable corporation created to assist the hospital district. The corporation operated on a portion of land leased by the hospital board under what the court termed a "favorable lease of land." In addition, the corporation had received grants amounting to hundred of thousands of dollars from the hospital board as well as a loan to open and operate a laboratory.
Clearly, the determination of whether a private organization will be subject to the Public Records Law will depend upon a number of factors relating to its relationship to the public agency. While no single factor is determinative, the variety of factors, viewed in their totality, will determine the applicability of Chapter 119, Florida Statutes.
This office has been advised that the Tampa Bay Performing Arts Center, Inc. (center), was created in 1980 as a private not-for-profit corporation. The purpose of the center, as set forth in its Articles of Incorporation, is the cultural and educational enhancement of the general public.[8]
The Articles of Incorporation for the center specify that the board of trustees, the governing body of the center, shall be composed of not less than fifteen members. Of those members, four are designated public officials the Tampa City Mayor or his designee, the Tampa City Council Chairman or his designee, the Chairman of the Hillsborough County Arts Council or his designee, and the Hillsborough County Commission Chairman or his designee.[9] In addition, the mayor is responsible for selecting three other members of the board of trustees.[10]
In 1984, the City Council of the City of Tampa (city) passed a resolution authorizing the city to enter into a lease agreement with the center to operate the city's performing arts facility. The facility, owned by the city, was leased to the center for a period of ninety-nine years at a yearly rental of $100. While the lease provides that the center operates the facilities as an independent contractor,[11] the center is authorized to request and has received public funding,[12] and this office has been advised that the center has received funding from the city.
You state that the center was created by private individuals. However, an examination of the Articles of Incorporation of the center clearly indicates that the city and county may exercise considerable control over the corporation by virtue of the fact that seven of the fifteen members on the board of trustees are city or county officials or are appointed by the mayor. The center is operating a publicly owned facility and receives funding from the city. You state that the promotion of the performing arts appears to be a municipal function.[13] Pursuant to the lease agreement, the center is carrying our that function for the city.
Based upon review of the facts presented to this office regarding the relationship between the center and the city in their totality, it appears that the center is an agency as that term is defined for purposes of Chapter 119, Florida Statutes, and thus subject to the requirements of that law. While not created by the city, the center is governed by a board of trustees composed of a number of city and county officials or appointees of the mayor. It is utilizing public property in carrying out its goals; goals which are similar to that of the city — the provision and enhancement of the performing arts for the benefit of the public. It is performing a function which the city itself has stated constitutes a governmental function.
Therefore, based upon the facts presented to this office as applied to the "totality of factors" analysis espoused by The Supreme Court of Florida in News and Sun-Sentinel Company v.Schwab, Twitty Hanser Architectural Group, Inc., supra, I am of the opinion that the center is an agency for purposes of Chapter 119, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 119.011(1), Fla. Stat., defining "Public records" and Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So.2d 633 (Fla. 1980), which construed the above statutory definition.
[2] Section 119.011(2), Fla. Stat.
[3] See, e.g., Parsons Whittemore, Inc. v. Metropolitan DadeCounty, 429 So.2d 343 (Fla. 3d DCA 1983).
[4] See, e.g., Sarasota Herald-Tribune Company v. CommunityHealth Corporation, Inc., 582 So.2d 730 (Fla. 2d DCA 1991); Foxv. News-Press Publishing Company, Inc., 545 So.2d 941 (Fla. 2d DCA 1898); Schwartzman v. Merritt Island Volunteer FireDepartment, 352 So.2d 1230 (Fla. 4th DCA 1977), cert. denied,368 So.2d 132 (Fla. 1978).
[5] 17 F.L.W. S156 (Fla., filed March 5, 1992).
[6] 352 So.2d 1230 (Fla. 4th DCA 1977).
[7] 582 So.2d 730 (Fla. 2d DCA 1991).
[8] See, s. (a)(1), Art. II, of the Articles of Incorporation of the center.
[9] Section (a)(1)-(4), Art. VII, Articles of Incorporation.
[10] Section (a)(5), Art. VII, Articles of Incorporation.
[11] See, paragraph 32.1, Lease.
[12] See, paragraph 5 of the Lease, authorizing the center to seek public funding, and providing that the city will assist the center in obtaining funds from other sources.
[13] Chardkoff Junk Company v. City of Tampa, 135 So. 457 (Fla. 1931); McQuillin Municipal Corporation s. 1.64.