The Honorable Bill Nelson State Treasurer and Insurance Commissioner The Capitol Tallahassee, Florida 32399-0301
Dear Commissioner Nelson:
You ask substantially the following question:
Are records reflecting the development and operation of a private for-profit business enterprise, which are created, copied, or otherwise processed in the computer of a non-profit corporation that is subject to chapter 119, Florida Statutes, exempt from disclosure as a trade secret when such records are processed and manipulated by the corporation's employees using corporate equipment and facilities on corporate time?
In sum:
Records reflecting the development and operation of a private for-profit business enterprise, which are created, copied, or otherwise processed in the computer of a non-profit corporation that is subject to chapter 119, Florida Statutes, are not exempt from disclosure as a trade secret when such records are processed and manipulated by the corporation's employees using corporate equipment and facilities on corporate time.
The Florida Residential Property and Casualty Joint Underwriting Association (JUA) is an insurance mechanism created pursuant to section 627.351(6), Florida Statutes, to provide residential property insurance coverage to property owners within the state who are unable to secure such coverage in the private marketplace. In 1993, Shared Market Insurance Services, Inc. (SMISI), a Florida non-profit corporation, was established. SMISI is subordinate to and supervised by the JUA and the corporation's seven member board of directors is appointed by the chairman of the JUA. You state that all services rendered by SMISI are paid from policyholder premiums from the JUA and other statutorily created joint underwriting associations.
Recently the SMISI board of directors approved the termination of four senior managers of the corporation, including its chief executive officer. The executive director of the JUA was assigned to be acting chief executive officer of SMISI. During an examination of the books and records of SMISI, documents relating to the for-profit business enterprise were discovered on SMISI computers. The material contained a statement alleging that the information constituted a trade secret. The documents relating to this business enterprise are not documents that were provided to SMISI as part of any activity in which SMISI is engaged. You have advised this office that the documents were placed in SMISI records by SMISI employees who, although involved in this business enterprise as a personal business activity, utilized office time and equipment to process and manipulate such documents.[1]
It is the position of the Department of Insurance that the records of SMISI, like those of the JUA, are public records. You state that SMISI has not asserted any exemption to the Public Records Law with regard to these records. The question, however, has been raised as to whether such records are exempt from disclosure as trade secrets.
This office has previously stated that the joint underwriting associations, such as the Florida Windstorm Underwriting Association, are subject to the Public Records Law.[2] As an entity wholly controlled by the JUA, the non-profit corporation would also be subject to the requirements of that law.[3] The records created, copied, or otherwise processed by such employees, using corporate equipment and facilities and while on corporate time, would constitute a public record for purposes of chapter 119, Florida Statutes.
The fact that information is designated as a trade secret does not itself make such information a trade secret for purposes of section 812.081, Florida Statutes.[4] Moreover, the fact that information constitutes a trade secret under section 812.081 does not, in and of itself, remove it from the requirements of the Public Records Law. This office has previously concluded that an agency is under a duty to release public records even though such records may constitute trade secrets when there is no statute making the information confidential or exempt from disclosure under chapter 119, Florida Statutes.[5]
Section 119.165, Florida Statutes, recognizes an exemption from the Public Records Law for certain trade secret information held by an agency. The statute was created by section 2 of chapter 94-100, Laws of Florida. An examination of the enabling legislation does not indicate that the Legislature intended section 2 of chapter 94-100 to constitute a separate and general exemption from the Public Records Law for all trade secrets.[6]
Rather, in section 1 of chapter 94-100, the Legislature amended section 815.04, Florida Statutes, to create a public records exemption for computer data, programs, or supporting documentation which may be trade secrets as defined in section 812.081, Florida Statutes, when held by an agency. The language of section 2 of chapter 94-100, which is currently codified as section 119.165, constituted the finding of public necessity required by Article I, section 24, of the Florida Constitution.[7]
It is a cardinal rule of statutory construction that a statute should be construed so as to ascertain and give effect to the intention of the Legislature.[8] An examination of section 119.165, setting forth the legislative intent for the amendment of section 815.04, indicates that the Legislature sought to protect trade secrets which an agency, in carrying out its mission, requires an entity or individual to submit to the agency. As the Legislature made clear in section 119.165, such disclosure
would negatively impact the business interests of those providing an agency such trade secrets by damaging them in the marketplace, and those entities and individuals disclosing such trade secrets would hesitate to cooperate with that agency, which would impair the effective and efficient administration of governmental functions.
Accordingly, the exemption afforded by these sections applies to certain trade secret information that is provided to an agency whose records are subject to the Public Records Law. Under the circumstances you have described, the information was not provided to the corporation by a private entity or individual but rather was created, copied, or otherwise processed by the corporation's employees without authorization while working at the corporation and while using corporate equipment. I find nothing in these sections which would exempt such information from the provisions of the Public Records Law. Moreover, you have not drawn my attention to any other provision of law creating an exemption from chapter 119, Florida Statutes, applicable to such records.
While the Legislature amended section 627.351, Florida Statutes, during the 1995 session to provide for the confidentiality of certain records and meetings of the Residential Casualty Joint Underwriting Association, a review of the amendment does not indicate any provision that would exempt this material.[9]
Although section 627.351(6)(k)1.e., states that proprietary information licensed to the association under contract is confidential when the contract provides for the confidentiality of such proprietary information, this exemption would not apply to the situation you have described. Similarly, the exemption for information relating to negotiations for depopulation or contractual services would not appear to be applicable.[10]
Accordingly, I am of the opinion that records reflecting the development and operation of a private for-profit business enterprise, which are created, copied or otherwise processed in the computer of a non-profit corporation that is subject to chapter 119, Florida Statutes, are not exempt from disclosure as a trade secret when such records are processed and manipulated by the corporation's employees using corporate equipment and facilities on corporate time.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] While you indicate that the employees were permitted to pursue outside business activities, such employees were not authorized to utilize corporate facilities and equipment or to conduct such activities while ostensibly performing their duties at the non-profit corporation.
[2] See, Op. Att'y Gen. Fla. 94-32 (1994).
[3] See, s. 119.011(2), Fla. Stat., defining "agency" for purposes of Ch. 119, Fla. Stat., to include, among others, private entities acting on behalf of a public agency; News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc.,596 So.2d 1029 (Fla. 1992), setting forth a totality of factors analysis to be used in determining the applicability of the Public Records Law; Sarasota Herald-Tribune Company v. Community Health Corporation, Inc., 582 So.2d 730 (Fla. 2d DCA 1991), in which the court held that a non-profit corporation created and funded by an agency subject to Ch. 119 to operate as a side by side corporation was also subject to Ch. 119. Applying the six prong test, SMISI, as a wholly controlled subsidiary of the JUA that is funded from premiums from the JUA and other statutorily created joint underwriting associations, would appear to constitute an "agency" for purposes for Ch. 119.
[4] See, Op. Att'y Gen. Fla. 80-31 (1980). And see, s.812.081(1)(c), Fla. Stat., defining "trade secret" as
the whole or any portion or phase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business with an advantage, or an opportunity to obtain an advantage, over those who do not know or use it. "Trade secret" includes any scientific, technical, or commercial information, including any design, process, procedure, list of suppliers, list of customers, business code, or improvement thereof. Irrespective of novelty, invention, patentability, the state of the prior art, and the level of skill in the business, art, or field to which the subject matter pertains, a trade secret is considered to be: 1. Secret; 2. Of value; 3. For use or in use by the business; and 4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it
when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.
[5] See, Op. Att'y Gen. Fla. 92-43 (1992), stating that s.812.081, Fla. Stat., does not constitute a general exemption to Ch. 119, Fla. Stat.
[6] See, title to Ch. 94-100, Laws of Florida, which states:
An act relating to confidentiality of certain trade secret information; amending s. 815.04, F.S.; providing an exemption from public records requirements for data held by an agency which is a trade secret and which exists internal or external to a computer system; providing for future review and repeal; providing a finding of public necessity; providing an effective date. (e.s.)
Had the Legislature intended s. 119.165, Fla. Stat., to stand alone as a general exemption for trade secrets held by an agency, there would have been no need for the Legislature to adopt individual trade secret exemptions from Ch. 119, Fla. Stat. See, e.g., Chs. 95-133, 95-366, 95-386, Laws of Florida, creating trade secret exemptions from the Public Records Law. Under the rules of statutory construction, it should never be presumed that the Legislature intended to enact purposeless, and therefore useless, legislation. Sharer v. Hotel Corporation of America,144 So.2d 813, 817 (Fla. 1962).
[7] See, Art. I, s. 24(c), Fla. Const., stating in part that the Legislature may provide by general law for the exemption of records from the disclosure requirements of subsection (a) "provided that such law shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law."
[8] See, City of Tampa v. Thatcher Glass Corporation,445 So.2d 578 (Fla. 1984); Parker v. State, 406 So.2d 1089, 1090 (Fla. 1981) (legislative intent is the polestar by which court must be guided in interpreting statutory provisions).
[9] See, s. 627.351(6)(k)1., Florida Statutes, as amended by s. 1, Ch. 95-233, Laws of Florida, which provides:
The following records of the Residential and Casualty Joint Underwriting Association are confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution: a. Underwriting files, except that a policyholder or an applicant shall have access to his or her own underwriting files. b. Claims files, until termination of all litigation and settlement of all claims arising out of the same incident, although portions of the claims files may remain exempt, as otherwise provided by law. Confidential and exempt claims file records may be released to other governmental agencies upon written request and demonstration of need; such records held by the receiving agency remain confidential and exempt as provided for herein. c. Records obtained or generated by an internal auditor pursuant to a routine audit until the audit is completed, or if the audit is conducted as part of an investigation, until the investigation is closed or ceases to be active. An investigation is considered "active" while the investigation is being conducted with a reasonable, good-faith belief that it could lead to the filing of administrative, civil, or criminal proceedings. d. Matters reasonably encompassed in privileged attorney-client communications. e. Proprietary information licensed to the association under contract and the contract provides for the confidentiality of such proprietary information. f. All information relating to the medical condition or medical status of an association employee which is not relevant to the employee's capacity to perform his or her duties, except as otherwise provided in this paragraph. Information which is exempt shall include, but is not limited to, information relating to workers' compensation, insurance benefits, and retirement or disability benefits. g. Upon an employee's entrance into the employee assistance program, a program to assist any employee who has a behavioral or medical disorder, substance abuse problem, or emotional difficulty which affects the employee's job performance, all records relative to that participation shall be confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution, except as otherwise provided in s.112.0455(11). h. Information relating to negotiations for financing, reinsurance, depopulation, or contractual services, until the conclusion of the negotiations. i. Minutes of closed meetings regarding underwriting files, and minutes of closed meetings regarding an open claims file until termination of all litigation and settlement of all claims with regard that claim, except that information otherwise confidential or exempt by law will be redacted. . . .
[10] Section 627.351(6)(k)1.h., Fla. Stat., as amended.