Mr. John G. Hubbard Tarpon Springs City Attorney Post Office Box 1178 Dunedin, Florida 34698
Dear Mr. Hubbard:
You ask the following question:
Are records and proceedings of the Tarpon Springs Hospital Foundation, Inc., relating to the operation of the Helen Ellis Memorial Hospital, subject to the Public Records Law and the Government in the Sunshine Law?
In sum:
The records and proceedings of the Tarpon Springs Hospital Foundation, Inc., relating to the operation of the Helen Ellis Memorial Hospital, are subject to the Public Records Law and the Government in the Sunshine Law.
According to your letter, the City of Tarpon Springs founded the Tarpon Springs General Hospital (now known as the Helen Ellis Memorial Hospital) in the late 1920s. In 1947, the City leased the hospital directly to Tarpon Springs Hospital Foundation, Inc. (Foundation), for operation. Until the 1968-1969 fiscal year, the City directly funded the hospital through a line item in the City budget.
You state that the City formed the Tarpon Springs Health Facilities Authority (Authority) in 1982 for the purpose of providing tax-exempt financing to the hospital and, toward that end, the Authority issued revenue bonds in 1982, 1985, 1988 and 1991. The City leases the hospital to the Authority, which subleases the hospital to the Foundation.
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, provides that all meetings of a board or commission of "any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times[.]"[1] The statute has been held applicable to private organizations when the private entity has been created by public agencies, when there has been a delegation of the public agency's governmental functions, or when the private organization plays an integral part in the decision-making process of the public agency.[2]
Florida's Public Records Law, Chapter 119, Florida Statutes, provides that records made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making the records confidential.[3] An "[a]gency" is defined for purposes of the Public Records Law to include private corporations acting on behalf of any public agency.[4]
Thus, in considering the applicability of the Sunshine Law or the Public Records Law to a private organization such as the Foundation, the courts and this office have generally reviewed the relationship between the private entity and the public agency.
For example, the Supreme Court of Florida in News and Sun-SentinelCompany v. Schwab, Twitty Hanser Architectural Group, Inc.,[5]
articulated a totality of factors test to determine whether a private entity is acting "on behalf of" a public agency for purposes of Chapter 119, Florida Statutes. This analysis involves consideration of the following:
1) Creation — did the public agency play any part in the creation of the private entity?
2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity?
3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment?
4) Decision-making Process — does the private entity play an integral part in the public agency's decision-making process?
5) Governmental Function — is the private entity exercising a governmental function?
6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?
Using this test, the Schwab Court concluded that an architectural firm under contract with a school board to provide architectural services associated with the construction of school facilities was not "acting on behalf of" the school board. Therefore, the architectural firm was not subject to the requirements of Chapter 119, Florida Statutes.[6]
Recently, the Fifth District Court of Appeal in News-JournalCorporation v. Memorial Hospital-West Volusia[7] reviewed the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities for purposes of the constitutional guarantees for open meetings.[8] The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."
The court held that the not-for-profit company, which was specifically created to contract with a public hospital authority for the operation of the authority hospital established by public funds, was subject to open records and open meeting requirements of Article I, section 24, Florida Constitution.[9]
In the instant inquiry, you state that the Foundation was created to operate the city-owned hospital, and there has been substantial public investment in the hospital through direct financing by the City for nearly forty years. In addition, the Authority has provided funding for the operation, maintenance and expansion of the hospital through the issuance of revenue bonds. According to your letter, the Foundation pays a nominal fee to lease the hospital, which is publicly owned. While neither the City nor the Authority appears to be involved in the day-to-day operation of the hospital by the Foundation, the purpose of the Authority — that is, to facilitate the public's access to adequate medical care — is accomplished by the sublease.[10] Moreover, you state that the purpose of the Foundation is, among other things,
"(a) To operate a general hospital and associated facilities;
(b) To promote and foster such plans as may be necessary in order to properly and satisfactorily operate and maintain the Tarpon Springs General Hospital in cooperation with, and in connection with the City of Tarpon Springs, Florida, a municipal corporation."
The Foundation, therefore, appears to assist the City and Authority and to serve the citizens of the those governmental entities. Moreover, here, as in News Journal Corporation v.Memorial Hospital-West Volusia, Inc., supra, the Foundation is providing a service formerly provided by the City and using the same facilities or equipment acquired previously by the public body with public funds.
Accordingly, I am of the opinion that the records and proceedings of the Tarpon Springs Hospital Foundation, Inc., relating to the operation of the Helen Ellis Memorial Hospital, are subject to the Public Records Law and the Government in the Sunshine Law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 286.011(1), Fla. Stat.
[2] See, e.g., Ops. Att'y Gen. Fla. 92-53 (1992) (direct support organization created for purpose of assisting public museum subject to s. 286.011); 83-95 (1983) (where county accepted services of nongovernmental committee to recodify and amend county's zoning laws, committee subject to Sunshine Law).
[3] See, s. 119.011(1), Fla. Stat. (1996 Supp.), defining "Public records"; and Shevin v. Byron, Harless, Schaffer, Reid andAssociates, Inc., 79 So.2d 633 (Fla. 1980).
[4] Section 119.011(2), Fla. Stat. (1996 Supp.).
[5] 596 So.2d 1029 (Fla. 1992).
[6] The Schwab Court relied on several earlier district court opinions in developing the totality test. In Schwartzman v.Merritt Island Volunteer Fire Department, 352 So.2d 1230 (Fla. 4th DCA 1977), the district court concluded that a nonprofit volunteer fire department was subject to Chapter 119, Florida Statutes, since the fire department had been given stewardship over firefighting, it conducted its activities on public property, and it was funded in part by public money.
[7] Case No. 96-2608 (Fla. 5th DCA, filed May 16, 1997).
[8] See, Art. I, s. 24, Fla. Const., providing that the public has a right to review the records of any public body "or persons acting on their behalf," and that any meeting of a collegial public body in which public business is discussed or transacted shall be open to the public.
[9] And see, Standfield v. Salvation Army, 695 So.2d 501 (Fla. 5th DCA 1997).
[10] See, News Journal Corporation v. Memorial Hospital-WestVolusia, Inc., supra, which in considering the Schwab criteria for playing an integral part in the decision-making process stated that the hospital authority's purpose was to see that its constituents have access to hospital services and that "[t]his arrangement achieves that goal."
In addition, the court held that the authority exercised considerable control over the lessee, despite having no voting board member on the lessee's board of directors, by virtue of the requirements of the lease and the performance standards established therein. A provision in the lease authorizing termination of the lease for default or deficiency in the standards of performance constituted, in the court's opinion, "real control." Thus, the fact that no City or Authority official sits on the Foundation's governing body does not, under theMemorial Hospital court's analysis, necessarily preclude a finding that the public body has control over the lessee.