Dear Mr. Angeliadis:
On behalf of the Board of County Commissioners of Sumter County, you request a legal opinion on substantially the following questions:
1. What is the formula, and source of data represented therein, utilized to calculate the county's portion of "local matching funds" required by section 394.76, Florida Statutes?
2. Are "in-kind" contributions by the county considered in determining the county's contribution pursuant to section 394.76, Florida Statutes?
3. May the county require disclosure of financial reports and sources of other funding to validate data used in the formula to determine "local matching funds?"
4. Does the county possess oversight of an entity requesting "local matching funds," such as participation in the operational or budget review or approval process of such entity?
5. May "in-kind" contributions be used to offset the county's matching funds obligation?
6. Who is required to establish the level, source, or availability of other local matching funds when there is a dispute as to the level of funding to be provided by the county?
In sum:
1. Section 394.76(3)(b), Florida Statutes, requires local participation on a 75-to-25 percent state-to-local ratio of funding for all contracted community alcohol and mental health services, except those programs specifically identified in the statute and those specified in section 394.457(3), Florida Statutes.
2. 5. "In-kind" contributions are recognized by administrative rule as satisfying requirements for matching funds.
3. 4. A local governing body is statutorily required to have an annual audit performed on the expenditure of public funds it has provided to carry out the provisions of the act to ensure that such funds are expended only for substance abuse or mental health purposes. No other statutory provision appears to grant local governing bodies oversight of the operation or other financial activities of a substance abuse or mental health services provider.
6. While the act contemplates that a county will have input into the development of a district plan for the provision of substance abuse and mental health services and is one of the enumerated parties that must approve the plan, ultimately, the legislative appropriation to the Department of Children and Family Services will determine the level of local match participation by a county. The district administrator is authorized to require changes to bring the district plan into compliance with the statutory requirements and any dispute between the district administrator and the district board, including the projected budget, is to be resolved by the department's secretary.
You state that Sumter County has received a request for funding from a non-profit provider of mental health, crisis stabilization, and Baker Act services to citizens of Sumter County and Lake County. Currently, such providers submit requests to the county, then await approval through the budget hearing process. Sumter County, however, is unable to determine whether its share of the funding amount to the provider is affected by other sources of funding such as its "in-kind" contribution of physical space to the provider, or by the fact that the provider's services are provided to residents of two counties. The county further believes that other forms of available local matching funds must be identified, accounted for, and considered prior to its committing any funds. Additionally, the county wishes to participate in the planning, evaluation, auditing, and implementation of the programs for which it provides funding.
Questions One and Six
Part IV of Chapter 394, Florida Statutes, is "The Community Substance Abuse and Mental Health Services Act" (act).[1] Section 394.76, Florida Statutes, addresses the financing of district programs and services under the act and specifies the means to determine the local match funding level, if such level is not provided in the General Appropriations Act or the substantive bill implementing the General Appropriations Act. Section 394.76(9)(a), Florida Statutes, states:
"State funds for community alcohol and mental health services shall be matched by local matching funds as provided in paragraph (3)(b). The governing bodies within a district or subdistrict shall be required to participate in the funding of alcohol and mental health services under the jurisdiction of such governing bodies. The amount of the participation shall be at least that amount which, when added to other available localmatching funds, is necessary to match state funds." (e.s.)
The term "[l]ocal matching funds" is defined as "funds received from governing bodies of local government, including city commissions, county commissions, district school boards, special tax districts, private hospital funds, private gifts, both individual and corporate, and bequests and funds received from community drives or any other sources."[2] Generally, with enumerated exceptions that do not require local match funds, [3] "[a]ll other contracted community alcohol and mental health services and programs, except as identified in s. 394.457(3), [4] shall require local participation on a 75-to-25 state-to-local ratio."[5]
Thus, the plain language of the statute mandates that state funds appropriated for community alcohol and mental health services shall be matched by local governing bodies and directs that the formula for determining the local match funds is based upon the state providing 75% of the funding for programs subject to local matching funds, with the remaining 25% match provided by the local sources available for matching funds.
As referenced above, the governing bodies within a district or a subdistrict must participate in the funding of alcohol and mental health services under the jurisdiction of such governing bodies and the amount of their participation must be at least that amount which, when added to other available local matching funds, is necessary to match state funds. The statute, therefore, clearly acknowledges that there may be multiple sources for contributing to the local match amount and, in defining local matching funds, gives an open-ended range of sources that may be included.
Further, as in this instance where two counties within a service district are to be served by a provider, section 394.73(3), Florida Statutes, states:
"When a service district comprises two or more counties or portions thereof, it is the obligation of the planning council to submit to the governing bodies, prior to the budget submission date of each governing body, an estimate of the proportionate share of costs of alcohol, drug abuse, and mental health services proposed to be borne by each such governing body."
The act, therefore, directs how the proportionate share of costs of a substance abuse or mental health program will be assessed when two or more counties receive services from such program, but does not appear to contemplate that an individual county has the authority to determine the amount it must pay. This is not to say that the county is without a voice in the overall process. Section 394.75, Florida Statutes, sets forth the procedure for establishing state and district substance abuse and mental health plans. Subsection (3) of the section directs the district "health and human services board"[6] to prepare an integrated district substance abuse and mental health plan. The statute specifically provides that the plan shall include:
 "(a) A record of the total amount of money available in the district for mental health and substance abuse services.
 (b) A description of each service that will be purchased with state funds.
 (c) A record of the amount of money allocated for each service identified in the plan as being purchased with state funds.
 (d) A record of the total funds allocated to each provider.
 (e) A record of the total funds allocated to each provider by type of service to be purchased with state funds.
 (f) Input from community-based persons, organizations, and agencies interested in substance abuse and mental health treatment services; local government entities that contribute funds to the public substance abuse and mental health treatment systems; and consumers of publicly funded substance abuse and mental health services, and their family members. The plan must describe the means by which this local input occurred.
The plan shall be submitted by the district board to the district administrator and to the governing bodies for review, comment, and approval.[7]" (e.s.)
The district plan must also include:
 "a procedure for securing local matching funds. Such a procedure shall be developed in consultation with governing bodies and service providers."[8]
In developing the district plan, the statute requires that "optimum use shall be made of any federal, state, and local funds that may be available for substance abuse and mental health service planning. However, the department must provide these services within legislative appropriations."[9]
Thus, while a county has input in the development of a district plan for substance abuse and mental health services, it would appear that the county's level of participation by local matching funds is ultimately determined by the Legislature's appropriation for the Department of Children and Family Services (DCF) to provide such services. As reflected above, the county is involved in formulating the district plan for delivery of services. The district administrator, however, is required to make modifications to the district plan he or she deems necessary to bring it into compliance with the provisions of the act.[10] If the district board and the district administrator are unable to agree on the plan, including the projected budget, the disputed issues are to be submitted directly to the department's secretary for immediate resolution.[11]
Questions Two and Five
While section 394.76, Florida Statutes, does not specifically address "in-kind" contributions in relation to local match funds, Chapter 65E, Florida Administrative Code, administrative rules promulgated to implement operation of the statute, provide assistance in determining what constitutes a matching fund and how "in-kind" contributions are counted. Among those items recognized as satisfying matching requirements is "[t]he value of third-party funds and in-kind contributions applicable to the matching period[.]"[12] (e.s.) Moreover, the rules allow the donated use of space to an organization, with the value of the space as an allowable cost, and specifically recognize that "[t]he value of the donations may be used to meet matching requirements."[13] In determining the value of a donation of equipment, building, and land, Rule 65E-14.006(4), Florida Administrative Code, states: "The fair market value at the time of donation of the equipment, building or land may be counted as matching."
This office has been advised by DCF that "in-kind" contributions may be considered in calculating a local government's contribution of matching funds. Thus, in light of the fact that "in-kind" contributions are recognized by the controlling administrative rules as a means to satisfy requirements for matching funds and DCF's acknowledgment that "in-kind" contributions may be used to meet matching funds requirements, it would appear that the county may use its "in-kind" contributions in meeting its share of local matching funds.
Questions Three and Four
Section 394.76(10), Florida Statutes, authorizes a local governing body to appropriate moneys, in lump sum or otherwise, from public funds for the purpose of carrying out the provisions of "The Community Substance Abuse and Mental Health Services Act."[14] The paragraph further provides:
"In addition to the payment of claims upon submission of proper vouchers, such moneys may also at the option of the governing body, be disbursed in the form of a lump-sum or advance payment for services for expenditure, in turn, by the recipient of the disbursement without prior audit by the auditor of the governing body. Such funds shall be expended only for substance abuse or mental health purposes as provided in the approved district plan.Each governing body appropriating and disbursing moneys pursuantto this subsection shall require the expenditure of such moneys bythe recipient of the disbursement to be audited annually either inconjunction with an audit of other expenditures or by a separateaudit. Such annual audits shall be furnished to the governing bodiesof each participating county and municipality for theirexamination."[15] (e.s.)
Thus, the plain language of the controlling statute requires local governing bodies to have audits performed of the expenditure of public funds they have provided to carry out the provisions of the act to ensure that such funds are expended only for substance abuse or mental health purposes. Such audits may be in conjunction with audits of other expenditures or by a separate audit and must be furnished to the governing bodies of each county or municipality for their examination. I have not found, nor been referred to, any other provision in the act which expresses any further authority of local governing bodies in regard to audits of the operations of substance abuse and mental health providers.
Section 394.78, Florida Statutes, places administration of the act under DCF. The department is directed to adopt rules necessary for the act's administration and may adopt, among others, rules relating to "full disclosure of revenue funds and expenses." Thus, it may be advisable to work with DCF in further evaluating the performance and financial sources of mental health and substance abuse providers within your county.[16]
Sincerely,
 Pam Bondi Attorney General
PB/tals
[1] Section 394.65, Fla. Stat.
[2] Section 394.67(13), Fla. Stat.
[3] Section 394.76(3)(b), Fla. Stat., states:
 "Residential and case management services which are funded as part of a deinstitutionalization project shall not require local matching funds and shall not be used as local matching funds. The state and federal financial participation portions of Medicaid earnings pursuant to Title XIX of the Social Security Act, except for the amount of general revenue equal to the amount appropriated in 1985-1986 plus all other general revenue that is shifted from any other alcohol, drug abuse, and mental health appropriation category after fiscal year 1986-1987 or substance abuse and mental health appropriation category after fiscal year 2000-2001, shall not require local matching funds and shall not be used as local matching funds. Local matching funds are not required for general revenue transferred by the department into substance abuse and mental health appropriations categories during a fiscal year to match federal funds earned from Medicaid services provided for mental health clients in excess of the amounts initially appropriated. Funds for children's services which were provided through the Children, Youth, and Families Services budget which did not require local match prior to being transferred to the Substance Abuse and Mental Health Services budget shall be exempt from local matching requirements. . . ."
[4] Section 394.457(3), Fla. Stat., authorizes the Department of Children and Family Services to contract to provide, and be provided with, services and facilities in order to carry out its responsibilities under the "Florida Mental Health Act," with, among other entities, "counties, municipalities, and any other governmental unit, including facilities of the United States Government."
[5] Section 394.76(3)(b), Fla. Stat.
[6] A footnote relates that health and human services boards were abolished by s. 2, Ch. 2000-139, Laws of Fla., which substantially reworded s. 20.19, Fla. Stat. Section 20.19(6), Fla. Stat., requires the establishment of a community alliance in each county composed of stakeholders, community leaders, client representatives, and funders of human services "to provide a focal point for community participation and governance of community-based services."
[7] Section 394.75(3), Fla. Stat. And see s. 394.75(12), Fla. Stat, providing that "[e]ach governing body that provides local funds has the authority to require necessary modification to only that portion of the district plan which affects substance abuse and mental health programs and services within the jurisdiction of that governing body."
[8] Section 394.75(4)(h), Fla. Stat.
[9] Section 394.75(7), Fla. Stat.
[10] Section 394.75(11), Fla. Stat.
[11] Id.
[12] Rule 65E-14.005(1)(b), Fla. Admin. C.Cf. Rule 65E-14.005(2)(b), Fla. Admin. C., making "[c]osts or third-party funds and in-kind contributions that are used to satisfy a matching requirement of another State contract or Federal grant" unallowable for matching.
[13] Rule 65E-14.017(4)(j)2., Fla. Admin. C.
[14] Section 394.65, Fla. Stat., providing the title to Part IV of Ch. 394.
[15] Cf. s. 394.76(5), Fla. Stat., stating: "The department [of Children and Family Services] is authorized to make investigations and to require audits of expenditures. The department may authorize the use of private certified public accountants for such audits. Audits shall follow department guidelines." Seealso Rule 65E-14.003, Fla. Admin. C., relating to audits of contractors participating in substance abuse and mental health programs.
[16] While not posed in a question, your memorandum of law refers to Ch. 119, Fla. Stat., Florida's Public Records Law. I would note that the right of access to public records extends to records of private entities acting on behalf of a public agency.See s. 119.011(2), Fla. Stat. Where a private entity has contracted to provide services in place of a public agency, the records generated by the private entity's performance of that duty are public records, subject to disclosure (absent any applicable exemption or provision of confidentiality). See News andSun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group,Inc., 596 So. 2d 1029 (Fla. 1992). A copy of a standard contract used by DCF in securing services (CF Standard Contract 06/2011) requires a provider "[t]o allow public access to all documents, papers, letters, or other public records as defined in subsection 119.011(12), F.S. and as prescribed by subsection 119.07(1), F.S., made or received by the Provider in conjunction with this contract except that public records which are made confidential by law must be protected from disclosure."