829 So.2d 970 (2002)
WEEKLY PLANET, INC., Appellant,
v.
HILLSBOROUGH COUNTY AVIATION AUTHORITY, Concorde Companies, and Tampa Westshore Associates Limited Partnership, Appellees.
No. 2D01-4101.
District Court of Appeal of Florida, Second District.
November 1, 2002.
*971 David M. Snyder of David M. Snyder, P.A., Tampa, for Appellant.
Richard A. Harrison of Allen Dell, P.A., Tampa, for Appellee Hillsborough County Aviation Authority.
Steven L. Brannock and James B. Lake of Holland & Knight LLP, Tampa; Guy W. Spicola of Law Offices of Guy W. Spicola, Tampa; and David M. Mechanik of Mechanik Nuccio Williams Hearne & Wester, P.A., Tampa, for Appellees Concorde Companies and Tampa Westshore Associates.
ALTENBERND, Judge.
Weekly Planet, Inc., a newspaper publisher, appeals the trial court's order dismissing its complaint against the Hillsborough County Aviation Authority (the HCAA), Concorde Companies (Concorde), and Tampa Westshore Associates Limited Partnership (Tampa Westshore). The order effectively determines that certain leases and other documents in the possession of private parties, primarily Concorde and Tampa Westshore, that involve the development of the International Plaza shopping center are not public records subject to inspection by the newspaper. Although we understand the Weekly Planet's interest in these documents and its desire to see whether these documents would support or refute allegations that the HCAA entered into a "sweetheart" lease with Concorde, we conclude that the trial court correctly dismissed this action.
The HCAA did not delegate to Concorde a governmental function or a governmental project. The HCAA simply leased raw land to Concorde upon which Concorde planned to develop a private, for-profit project. No one argues that the HCAA has so involved itself in this project to transform Concorde's private business into a governmental function. In the final analysis, the fact that this private enterprise is *972 situated on land leased from a governmental authority does not transform Concorde's agreements with other private entities into public record documents.

I. DREW FIELD AND THE EVOLUTION OF THE HCAA
Though not essential to our decision, it is helpful to place this controversy in its historical context. The HCAA was first created in 1945 by the Florida Legislature to operate all publicly-owned aviation facilities within Hillsborough County, Florida. Ch. 23339, Laws of Fla. (1945). Its current power and authority are provided by a special act. Ch. 83-424, Laws of Fla. Before the HCAA existed, Drew Field Municipal Airport was created in 1928 as a modest local airport in competition with Tampa's premier airport, Peter O. Knight Airport. Shortly after it opened, the Depression struck and little occurred at this fledgling airport. During the Second World War, the City of Tampa leased Drew Field to the federal government. The military quickly transformed the small local airport into a huge military airbase. Thus, at the end of the war, the federal government returned a vastly different parcel of real estate to the local government. The HCAA was created in 1945 to take control of this military airbase and to devise a long-range plan for air service to this region of Florida. This planning came to fruition with the opening of the new terminal at Tampa International Airport in 1971.
In the process of assuming responsibility for all governmental airports in Hillsborough County, the HCAA became the landowner of many parcels of property. Some of this property is subject to property tax, and some is exempt. Much of this property is now essential to the operation of airports, but some of this property is surplus property or buffer property that will not be needed for the functions of any airport, even in the long term. This case involves approximately 150 acres of such land adjacent to Tampa International Airport.

II. THE HCAA AND THE DEVELOPMENT OF THE INTERNATIONAL PLAZA
No one argues that the 150 acres at issue in this case are part of any government-operated airport. Over the years since 1945, portions of this land have been the site of a motel, a golf course, tennis courts, and a football training facility for the Tampa Bay Buccaneers. Over time, a partnership known as Sunhil Investors acquired rights to lease this property. Sunhil Investors changed its name to International Plaza in 1985 and later changed its name to Concorde Companies. On May 5, 1994, the HCAA and Concorde Companies entered into a "Second Restated and Amended Lease" regarding this property.
The Second Restated and Amended Lease is a lengthy document, and there is no dispute that this entire document is a public record. This long-term lease basically transfers control of this parcel of government-owned land to Concorde until December 31, 2080. Concorde will own all improvements to the land during the term of the lease.
The rent paid by Concorde to the HCAA is set by a relatively complex rental clause. The clause establishes a minimum rent of $1,000,000 per year for each year after 1998. It establishes a "land rent" rate of $200,000 per year with an automatic rent increase of five percent at the expiration of every ten calendar years. It further establishes an additional "development rent" based on the square footage of floor space in all buildings constructed on the leased land. The rent is not based on a percentage of gross or net receipts from any of the private businesses located at International *973 Plaza. Thus, the HCAA has not attempted to become a partner in this real estate development, and it has not taken the risk associated with a rental rate based on gross receipts or some other measure of the commercial success of the development.
Concorde entered into another layer, or layers, of leases and agreements to develop this property. Specifically, Concorde entered into a "Lease Arrangement Agreement" with Tampa Westshore in 1994. Under this agreement, a substantial portion of the HCAA land was essentially subleased to Tampa Westshore. The lease between the HCAA and Concorde contemplated the execution of this Lease Arrangement Agreement and provided for certain rescission rights if that agreement and the development of a shopping center pursuant to it did not come to fruition. Nevertheless, the HCAA was not a signatory to the Lease Arrangement Agreement between Concorde and Tampa Westshore. In addition, although the Second Restated and Amended Lease describes the Lease Arrangement Agreement, acknowledges that a memorandum of it will be filed in the public records of Hillsborough County,[1] and describes Tampa Westshore's development of a shopping center as a "condition subsequent to the continuing validity of this lease," the lease does not provide that the HCAA is entitled to receive a full copy of the Lease Arrangement Agreement. It is undisputed that the HCAA has only received a redacted version of the Lease Arrangement Agreement, and it has provided that copy to the Weekly Planet.

III. WEEKLY PLANET'S INVESTIGATION AND REQUEST FOR PUBLIC RECORDS
The Weekly Planet has been conducting an investigation to determine whether, in authorizing the development of this parcel, the HCAA achieved the best financial arrangement possible from the perspective of local taxpayers. As part of that investigation, the Weekly Planet wanted to obtain the Lease Arrangement Agreement between Concorde and Tampa Westshore, as well as other leases and agreements involved in this development. The Weekly Planet made a public records request for these documents, and when it did not receive the documents it filed an action in circuit court. The complaint contained detailed allegations describing the nature of this dispute, and the parties cooperated with one another to permit the trial court to resolve the issue on a motion to dismiss. The trial court dismissed the complaint with prejudice.
The Weekly Planet argues that it is entitled to obtain a copy of the Lease Arrangement Agreement between Concorde and Tampa Westshore from either the HCAA or Concorde because the HCAA delegated its governmental functions to Concorde. With less fervor, it also argues that it is entitled to obtain copies of any "sublease, license, sublicense, or other assignment of rights to use and enjoy the Public Land owned by [the HCAA] and leased to Concorde." This would apparently include leases for individual stores in the mall, or other contractual arrangements necessary to manage and operate the shopping center.[2]

*974 IV. THE DEVELOPMENT AND LEASE DOCUMENTS AMONG THE PRIVATE PARTIES ARE NOT PUBLIC RECORDS
"Public record" is statutorily defined in section 119.011(1), Florida Statutes (2000), to include
all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
There is no argument in this case that HCAA, Concorde, or Tampa Westshore actually made or received the Lease Arrangement Agreement "pursuant to law or ordinance." However, certain documents prepared by and solely within the possession of private parties may be public records if they are prepared "in connection with the transaction of official business by an agency." § 119.011(1). See News & Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla.1992) (defining "agency" in section 119.011(1) broadly to include private entities acting on behalf of public agency; noting broad definition ensures public agency cannot avoid disclosure by delegating agency responsibility to private entity).
The case law establishes two general sets of circumstances in which documents in the possession of private entities must be produced as public records. First, when a public entity delegates a statutorily authorized function to a private entity, the records generated by the private entity's performance of that duty become public records. See Mem'l Hosp.-W. Volusia, Inc. v. News-Journal Corp., 729 So.2d 373 (Fla.1999). Second, when a public entity contracts with a private entity for the provision of certain goods or services to facilitate the public agency's performance of its duties, the private entity's records in that regard may be public if the "totality of the factors" indicates a significant level of involvement by the public agency. See News & Sun-Sentinel Co., 596 So.2d at 1031. In this case, the Weekly Planet essentially concedes that the "totality of the factors" approach does not establish the level of involvement by the HCAA to support a claim that the records are public. Thus, the Weekly Planet is arguing that the HCAA delegated its responsibilities to manage this parcel of land to Concorde and that all activities of Concorde in managing the land result in public record documents.
In this case, the governmental agency leased undeveloped land, which was owned by the government but not currently needed for any governmental function, to a private entity for the purposes of private development. Although the Weekly Planet has argued to the contrary, nothing in the law would empower the HCAA to build this commercial shopping mall as part of its legislative mandate.[3] The HCAA did not delegate its power to develop this mall to Concorde; it simply leased land on a long-term basis in exchange for rent with the knowledge that the tenant was planning such a commercial venture.[4]
*975 We cannot venture to guess whether this lease is a "good" deal or a "bad" deal from the perspective of the taxpayers in Hillsborough County. We suspect that a knowledgeable real estate broker could compare this public record land lease to other similar land leases for shopping centers to determine whether the HCAA received fair consideration for this lease under all the circumstances.[5] Nevertheless, although the concept of public record should be liberally construed, see City of St. Petersburg v. Romine, 719 So.2d 19, 21 (Fla. 2d DCA 1998), there is no justification to open the records of private businesses to this type of inspection when they are competing with other similar private businesses and are not performing any delegated governmental function.
Affirmed.
KELLY, J., Concurs.
WHATLEY, J., Concurs specially.
WHATLEY, Judge, Specially concurring.
I reluctantly concur with the majority opinion. My reluctance is not premised on the majority having misapplied the law. In fact, the majority opinion does what this court is compelled to do: namely, apply the law to the facts.
The problem is that through inattention or design the HCAA has failed, in my view, to adequately protect the public. Specifically, the HCAA entered into a lease with Concorde, knowing from the terms of that lease that the developing entity was Tampa Westshore. Further, HCAA knew that a lease arrangement agreement was entered into between Concorde and Tampa Westshore. The public, but for the "layering" of Concorde between HCAA and Tampa Westshore, would have been able to view the lease arrangement agreement as a public record. The public view of the lease arrangement agreement would not have given shopping mall competitors an undue advantage. It would have allowed the public the right to review and analyze the document that is part and parcel of a long-term lease of public land.
NOTES
[1] The memorandum of the lease arrangement agreement filed in the public records does not disclose or summarize the terms of the contract.
[2] Moreover, because the HCAA owns many parcels of land throughout Hillsborough County, the ruling in this case could affect the public availability of various agreements on other parcels that the HCAA has leased to other parties.
[3] This case does not involve a lease of space within a building or improvement constructed by a governmental agency primarily to perform some valid governmental function. Such a lease should typically be a public record document, and even subleases in such a situation may create public records under either a delegation theory or the totality of the factors.
[4] It is worth noting that the agreement between Concorde and Tampa Westshore would clearly not be a public record document if the HCAA had sold this undeveloped land to Concorde. We are not inclined to believe that the public records laws should be interpreted to place pressures on governmental entities to sell land that might be better protected for the public by long-term leases.
[5] We do note that the International Plaza shopping center is not exempt from property tax and, thus, generates tax revenue in addition to the lease payments. See Sebring Airport Auth. v. McIntyre, 642 So.2d 1072 (Fla. 1994).