988 So.2d 17 (2008)
B & S UTILITIES, INC., Appellant,
v.
BASKERVILLE-DONOVAN, INC., Appellee.
No. 1D07-2918.
District Court of Appeal of Florida, First District.
June 16, 2008.
Rehearing Denied August 14, 2008.
*18 Timothy P. Atkinson and Gavin D. Burgess of Oertel, Fernandez, Cole & Bryant, P.A., Tallahassee, for Appellant.
Thomas J. Guilday, Jaken E. Roane, Lindsay L. Carter, and D. Ty Jackson of Guilday, Tucker, Schwartz & Simpson, P.A., Tallahassee, for Appellee.
BENTON, J.
B & S Utilities, Inc. (B & S) appeals a final judgment, contending the circuit court erred in ruling that Baskerville-Donovan, Inc. (BDI) "did not act on behalf of [the City of Apalachicola] so as to make [any of] the firm's documents public records" for purposes of section 119.07, Florida Statutes (2006). See Fla. R.App. P. 9.030(b)(1)(A) (2007). In the judgment under review, the trial judge first stated: "Were this a case of first impression, I would find for the Plaintiff, holding that to the extent a private company contracts to perform public work, its records relating to that work are public records. Such an interpretation is not only consistent with the strong public policy of this state in favor of open government, it is easy to understand and apply." The judgment went on to conclude, however, that the language, not of the statute, but of the opinion in News and Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla.1992), and certain language in the Third District's opinion in Parsons & Whittemore, Inc. v. Metropolitan Dade County, 429 So.2d 343, 346 (Fla. 3d DCA 1983), required a contrary result.
We reverse the decision not to require BDI to produce for inspection the records B & S sought to inspectno exemption having been assertedbut affirm the circuit court's refusal to award B & S attorney's fees, and remand for further proceedings. As the Schwab decision explains, the statute defines "agency" to include private entities "acting on behalf of any public agency," § 119.011(2), Fla. Stat. (2006), in order "to ensure that a public agency cannot avoid disclosure under the Act by contractually delegating to a private entity that which otherwise would be an agency responsibility." 596 So.2d at 1031.

I.
For the past fifteen years at least, the City of Apalachicola (City) has turned various municipal engineering functions over to BDI, a private engineering company. In 1992, the City entered into a contract under which BDI undertook to provide specified engineering services,[1] and also *19 agreed to "[p]rovide ongoing general engineering services as needed, requested, or required by the City." In 1998, the City entered into a second contract with BDI specifically for engineering services in conjunction with the construction of water and wastewater system improvements.[2] The evidence revealed no outside contractor, other than BDI, to whom the City has turned for engineering services since 1992. The City could not, as a practical matter, have performed its municipal engineering functions without outside assistance, given the absence of a city engineer on the payroll and the City's historical staffing levels.[3]
An underground utility and excavation contractor, B & S entered into a contract with the City in 2002 to construct water distribution system improvements BDI had designed for the City. B & S's contract with the City outlined the extent of BDI's authority with respect to the project:
The ENGINEER [BDI] shall act as the owner's [the City's] representative during the construction period, shall decide questions which may arise as to quality and acceptability of materials furnished and WORK performed, and shall interpret the intent of the CONTRACT DOCUMENTS in a fair and unbiased manner. The ENGINEER [BDI] will make visits to the site and determine if the WORK is proceeding in accordance with the CONTRACT DOCUMENTS.
When B & S sent letters to BDI, invoking section 119.07 and requesting copies, or production for inspection, of documents pertaining to the project, BDI denied the requests, asserting that BDI did not fall within the definition of an "agency" for purposes of chapter 119, Florida Statutes.
Thus B & S proceeded below essentially in the manner outlined by the court in Fritz v. Norflor Construction Co., 386 So.2d 899 (Fla. 5th DCA 1980), where a construction company building a wastewater treatment facility for the City of Winter Garden sought to obtain records from Boyle Engineering Corporation, the engineering firm that had performed the design services for the City of Winter Garden:
We agree with the lower court's determination that Boyle is an "agency" under *20 section 119.011(2) insofar as it performed services for the City as the City Engineer, relating to the treatment plant. It could therefore be required to disclose any "public records" it may have in a proper proceeding. Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla.1980). However, Norflor should first request Boyle to allow it to inspect the records. If Boyle refuses, then, Boyle could be made a party to the mandamus suit, or a new petition could be filed against it.
386 So.2d at 901 (footnote omitted). Since, in the Norflor case, the design engineer had not been made a party to the proceedings, the language from the court's opinion set out above is dicta. But we believe the Norflor court's analysis is sound, adopt its reasoning as our own, and find it applicable here in light of the facts found below and recited in the judgment under review.
The circuit court ultimately ruled that BDI did not act on behalf of a public entity so as to make its documents public records subject to chapter 119. Citing section 180.06, Florida Statutes,[4] however, the circuit court first concluded that "BDI ha[d] entered into a contract with the City whereby BDI [wa]s to perform public functions on behalf of the City." The trial court found furthermore that "the city has obviously delegated some of its functions relative to supplying its citizens with a water system." The trial court's findings require the conclusion that BDI was an "agency" subject to chapter 119, particularly in light of the City's long-term and far-ranging reliance on BDI for engineering services. See Mem'l Hosp.-W. Volusia, Inc. v. News-Journal Corp., 729 So.2d 373, 381 (Fla.1999).

II.
Florida's policy of guaranteeing that public records are open for inspection contemplates the possibility that public records may sometimes be found in private hands. The Florida Constitution provides:
Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution.
Art. 1, § 24(a), Fla. Const. (emphasis added). For purposes of chapter 119, the Legislature has defined "agency" to include, not only governmental units, but also any "business entity acting on behalf of any public agency." § 119.011(2), Fla. Stat. (2006).
"The Public Records Act recognizes the danger that exists if private entities are allowed to demand that they retain custody [and prevent inspection] of documents *21 as a condition of doing business with a governmental body." Times Publ'g Co. v. City of St. Petersburg, 558 So.2d 487, 494 (Fla. 2d DCA 1990). Section 119.07, Florida Statutes (2006), requires that "[e]very person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." The Florida Legislature has declared by statute that "[i]t is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency." § 119.01(1), Fla. Stat. (2006).
In a decision handed down after Schwab, our supreme court approved the view that transfer of an "actual public function" to a private entity brings documents the private entity generates within the purview of chapter 119, to the extent the private entity creates the documents while performing the public function. The supreme court explained:
When the agreement transfers the actual public function, public access follows, as was correctly determined by the Fifth District in ... Stanfield v. Salvation Army, 695 So.2d 501 (Fla. 5th DCA 1997), in which the district court held that public access was required for a private entity that completely assumed a governmental obligation in its contract with a county government to provide probationary services. Id. at 502-03.
Memorial, 729 So.2d at 381. The actual public function delegated to a private entity in Memorial was the operation of a public hospital. The Stanfield court deemed documents the Salvation Army generated in performing a contract to provide probationary services for misdemeanants public records.

III.
In the present case, BDI acted as the "owner's representative" in regard to construction of the system improvements that took place in Apalachicola. Documents it generated in that capacity are public records. See Prison Health Servs., Inc. v. Lakeland Ledger Publ'g Co., 718 So.2d 204, 205 (Fla. 2d DCA 1998) (private provider of medical services to jail inmates generated documents deemed public records); Putnam County Humane Soc'y, Inc. v. Woodward, 740 So.2d 1238, 1240 (Fla. 5th DCA 1999) (private entity's animal control on behalf of county held to generate public records); Multimedia Holdings Corp. v. CRSPE, Inc., No. 03-CA-3474-G, 2003 WL 23741693 (Fla. 20th Cir. Ct. Dec. 3, 2003) (mid-island bridge study by private consultant to Fort Myers Beach deemed public record). The trial court seemed to rely principally on its understanding of the (pre-Memorial) decision in Schwab. In the Schwab case, the Palm Beach County School Board had contracted with an architectural firm "to act as a neutral third party, interpreting the construction contract and acting as the judge of performance by both the school board and the contractor." 596 So.2d at 1032.
The facts in Parsons & Whittemore differ dramatically from those in the present case. At issue here are records pertaining to a water distribution system built on public land. Over a period of several years, moreover, the City furnished BDI office space in Apalachicola for BDI's use while it performed engineering work for the City. In contrast, the private business entity whose records were sought in Parsons & Whittemore ran or intended to run its own business on its own property. It had "contracted to construct a [waste management] *22 facility to which it still retain[ed] title." 429 So.2d at 345.
With respect to BDI's role in the planning, design and construction of the system improvements, the present case more closely resembles, not Schwab, but Shevin v. Byron, Harless, Schaffer, Reid & Assocs., 379 So.2d 633 (Fla.1980), where documents generated by a consultant retained to make hiring recommendations to the governing board of the Jacksonville Electric Authority were deemed public records. BDI's responsibilities were not limited to construction activity or supervision, as was apparently the case in Schwab. BDI was involved in a range of activities on behalf of the City that included recommending budget priorities and making financing recommendations.

IV.
Because BDI provided the City a range of engineering services, acting de facto as the City's engineer, it is not necessary to resort to an analysis of the Schwab factors in order to decide the present case. See Stanfield v. Salvation Army, 695 So.2d 501, 503 (Fla. 5th DCA 1997) ("it is unnecessary to engage in the factor-by-factor analysis outlined by Schwab"). The Second District has explained:
The case law establishes two general sets of circumstances in which documents in the possession of private entities must be produced as public records. First, when a public entity delegates a statutorily authorized function to a private entity, the records generated by the private entity's performance of that duty become public records. See Mem'l Hosp.-W. Volusia, Inc. v. News-Journal Corp., 729 So.2d 373 (Fla.1999). Second, when a public entity contracts with a private entity for the provision of certain goods or services to facilitate the public agency's performance of its duties, the private entity's records in that regard may be public if the "totality of the factors" indicates a significant level of involvement by the public agency. See News & Sun-Sentinel Co., 596 So.2d at 1031.
Weekly Planet, Inc. v. Hillsborough County Aviation Auth., 829 So.2d 970, 974 (Fla. 2d DCA 2002) (emphasis added). While the "totality of the factors" discussed in Schwab also favors B & S's position, the fact that the City delegated its municipal engineering functions to BDI is dispositive. See Memorial, 729 So.2d at 381; Stanfield, 695 So.2d at 503.
The documents BDI generated in performing engineering services for the City over the more than fifteen years it has served as the de facto city engineer are public records. Just as in Stanfield, a public entity, here the City, delegated a governmental function and transferred an "actual public function" to a private entity, here BDI: General engineering services aside, the City contracted with BDI to conduct "evaluations of the City's wastewater collection system to determine necessary improvements," to conduct evaluations of the City's effluent disposal system for like purpose, to conduct "an engineering evaluation of the City's water system to determine operational deficiencies and to propose solutions for identified problems" and even to "[d]evelop funding priorities, applications, strategies and documentation to implement improvements to the City's water system." In evaluating the need for system improvements, in developing funding priorities that could shape the City's budget, as well as in acting as the City's representative in the improvement project,[5] BDI was "acting on *23 behalf of a[] public agency." § 119.011(2), Fla. Stat. (2006). Like the records of an engineering department in a larger local government entity,[6] the records generated by BDI's performance of its contracts with the City here are subject to chapter 119. § 119.011(2), Fla. Stat. (2006).

V.
We do not, however, disturb the judgment under review to the extent that it declined to award attorney's fees to B & S. Our supreme court has placed a definitive gloss on section 119.12, Florida Statutes (2006), which reads:
If a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that such agency unlawfully refused to permit a public record to be inspected or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees.
(emphasis added). See N.Y. Times Co. v. PHH Mental Health Servs., Inc., 616 So.2d 27, 29 (Fla.1993) ("If it is unclear whether an entity is an agency within the meaning of chapter 119, it is not unlawful for that entity to refuse access to its records." (Emphasis added.)).
The judgment under review can only be construed as finding that BDI's status as an "agency" was genuinely in doubt. The learned trial judge himself "confess[ed] ... to a bit of frustration in attempting to apply the case law that has developed in this area." It follows that B & S failed to prove that BDI did not act in good faith in failing to produce the records B & S sought. Under binding precedent, therefore, BDI did not "unlawfully refuse[]" to permit inspection of its records. § 119.12, Fla. Stat. (2006). Accordingly, the refusal to award attorney's fees was appropriate. See Putnam County, 740 So.2d at 1240 ("[A]n award of attorney's fees was not appropriate in this case because the Society acted on a good faith belief that it was not subject to the public records law." (citing Stanfield, 695 So.2d at 503)). See also Harold v. Orange County, 668 So.2d 1010, 1012 (Fla. 5th DCA 1996).
We affirm the denial of the request for an award of attorney's fees but reverse otherwise and remand for further proceedings.
LEWIS and ROBERTS, JJ., concur.
NOTES
[1] The engineering services contracted for included, but were not limited to, conducting evaluations of the City's water distribution system, wastewater collection system, and effluent disposal system, coordinating with other utility systems to determine financially and environmentally sound solutions to water supply and wastewater disposal, developing strategies to implement improvements to the City's water and wastewater systems, completing a "201 facilities plan," providing "[d]esign, permitting, bidding, contract administration, and inspection services" in connection with the wastewater and water system improvements, and filing the necessary operating permit applications.
[2] The 1998 contract was subsequently amended to broaden the scope of engineering services. The additional engineering services included work in support of applications for various additional permits, preparation of reports, surveys, identification of easements, wetlands delineation by a subconsultant, development of a test well program, and coordination for soils testing.
[3] The critical question is not who would have performed the engineering functions had BDI not been hired to do so, but whether the services furnished by BDI constituted performance of a municipal function. The Florida Constitution provides: "Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." Art. VIII, § 2(b), Fla. Const. See also Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 262 (Fla.2005).

The City had discretion to outsource its municipal engineering function to BDI. BDI's engineering services are analogous to the Salvation Army's misdemeanant probation services in Stanfield v. Salvation Army, 695 So.2d 501, 502 (Fla. 5th DCA 1997), and the Putnam County Humane Society's animal abuse investigation and removal services in Putnam County Humane Soc'y, Inc. v. Woodward, 740 So.2d 1238, 1240 (Fla. 5th DCA 1999).
[4] Section 180.06 authorizes any municipality, including the City of Apalachicola:

(3) To provide water and alternative water supplies, including, but not limited to, reclaimed water, and water from aquifer storage and recovery and desalination systems for domestic, municipal or industrial uses; (4) To provide for the collection and disposal of sewage, including wastewater reuse, and other liquid wastes;
. . . .
(6) And incidental to such purposes and to enable the accomplishment of the same, to construct reservoirs, sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, siphons, intakes, pipelines, distribution systems, purification works, collection systems, treatment and disposal works;
. . . .
(9) To construct such other buildings and facilities as may be required to properly and economically operate and maintain said works necessary for the fulfillment of the purposes of this chapter.
§ 180.06, Fla. Stat. (2006).
[5] Evidence that BDI acted for the City without any input from City officials in determining whether the City would deem work by City contractors on certain projects acceptable was undisputed. Also undisputed was evidence that, when approached after the fact about BDI's decisions, City officials refused even to discuss them; and that Ella Mosconis, BDI's senior project manager, told B & S officers in a meeting that "the City didn't know what they [sic] were doing, that she was in charge. She was the City engineer. There was nobody higher than her. That if we did not like her response, we could contact an attorney or the bonding company."
[6] B & S adduced evidence that Broward County has 150 engineers on staff and that the City of Tallahassee employs in-house engineers as well.