EDWARDS, J.
The Economic Development Commission of Floridans.. Space Coast, Inc. (“EDC”) appeals the trial -court’s final judgment requiring EDC to provide records to Scott Ellis, in his official capacity as Clerk of the Courts for Brevard County, Florida (“Ellis”). The trial court erred in utilizing only the delegation of function test to conclude that EDC was an agent acting on behalf of the county and, therefore, subject to Florida’s Public Records Act, chapter 119, Florida Statutes. Accordingly, we reverse and remand with directions to the trial court to analyze the nature and extent of EDO’s public role and functions utilizing .the Schwab totality of factors test. We affirm as to Ellis’ cross-appeal of the trial court’s denial of . his request for attorney’s fees, because EDO’s obligation to provide the requested documents was disputed in good faith. Therefore, attorney’s fees were not recoverable under section 119.12, Florida Statutes (2013).
AVAILABILITY OF PUBLIC RECORDS
Florida’s Public Records Act provides that “[i]t is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency.” § 119.01, Fla. Stat. (2013). The Act defines “agency” to include any private business entity “acting on behalf of any public agency.” § 119.011(2), Fla. Stat. (2013). “This broad definition [of agency] serves to ensure that a public agency cannot avoid disclosure under the Act by contractually delegating to a private entity that which otherwise would be an agency responsibility.” News & Sun-Sentinel Co. v. Schwab, *120 Twitty & Hanser Architectural Grp., Inc., 596 So.2d 1029, 1031 (Fla.1992).
REQUEST FOR DOCUMENTS
Ellis made repeated public records requests to EDC seeking copies of documents in EDC’s possession concerning BlueWare, a company that the prior clerk of the court engaged to provide services to the county. EDC denied each request, initially claiming that the documents were confidential and thus exempt from disclosure. Later, EDC claimed that it denied the requests'because it was a private organization rather than a governmental agency or entity, and the documents were not public records. In the meantime, criminal charges related to official misconduct, bid tampering, bribery, and conspiracy were filed against BlueWare’s CEO, the former clerk of court, and their liaison. Ellis filed suit to force EDC to turn over' copies of the records pértaining to Blue-Ware. In order to decide whether Ellis was entitled to obtain the requested documents, the trial court had to determine whether EDC, a private organization, was engaged in performance of governmental functions to such an extent that it would be deemed to be an agent, acting on behalf of Brevard County for chapter 119 purposes.
HISTORY, ORGANIZATION, AND ROLE OF EDC
During a two-day evidentiary hearing before the trial court, witnesses testified about the history, organization, and function of EDC and its predecessor. EDC is a private non-profit economic development agency that entered into a contract to provide certain services to Brevard County. EDC’s predecessor was the Brevard Economic Development Council (“Council”),which dated back to 1967. The Council was created, maintained, staffed, and operated by the county as its own public economic development agency. In 1989, a group of business leaders formed a committee that developed a plan for the Council to be privatized. They felt that a private organization would be able to work better with business and industry than a governmental agency could. The county approved the conversion of the Council from a public agency to a private entity. EDC took over the Council’s remaining budget for that year, as well as the' former Council’s staff, equipment, arid furniture.
When first incorporated in 1989, EDC had fifteen members on its board of directors. Five of the directors were appointed by the county, but the appointees were not county employees. Currently, EDC has 123 members on its board of directors and thirty-four, representatives on its executive board. EDC has many investors who represent the Brevard County business community. Those investors sit on the EDC boards and various committees. The county has a single seat on the executive board and has the ability to appoint six members to the board of directors. The president/CEO of EDC is hired by and reports to EDC’s board of directors; not the county.
As its name suggests, EDC’s goal is to facilitate the growth of business and'industry along the Space Coast by encouraging local businesses to stay and expand, and by marketing to non-resident businesses that may begin or renew operations in the county.
Under its service agreement -with the county, EDC’s contractual marketing function involved informing those companies of resources,’ benefits, and incentive programs that may be available from Brevard County,' such as its ad valorem tax abatement program. EDC’s contract provided that it would coordinate and cooperate with county and regional planning agencies *121 regarding plans and programs related to economic development, plan and develop services that would assist county industry and encourage non-resident industries to use business facilities located in the county, and assist local chambers of commerce and other economic development councils in their efforts to .expand the business and industrial base of the county.
The service agreement with the county required EDC to review applications for Industrial Development Revenue Bonds and for tax abatements, and to then make recommendations to the county regarding businesses that wished to participate in those county programs. Businesses could, but were not required to, work with EDC when applying for those county programs. EDC had no authority to authorize or grant any such tax benefits or other incentives, as that decision-making function was carried out solely by the county government. While EDC may advocate on behalf of a particular business that is considering expanding or relocating, EDC has no decision-making authority and cannot bind the county with regard to providing any incentives to the business.
Under the most recent service agreement, Brevard County pays- EDC. $1,400,050 annually. This amounts to nearly half of EDC’s operational budget. EDC was selected to serve as the county’s primary marketing and recruitment agency for .economic development; however, EDC is not involved in all of the economic development activities - concerning the county. There are county employees and agencies responsible for economic development associated with the county’s seaport, airports, downtown revitalization, urban renewal, retail development, tourism, and job training. Unconnected with its contract with the county, EDC also provides economic development services for other entities such as -the Florida Manufacturing Extension Partnerships, the Melbourne International Airport, local colleges and universities, and certain grant programs.
PRIVATE ENTITIES AND PUBLIC RECORDS ACT
A private entity acting on behalf of a public entity is subject to the Act; however, a private entity that is merely providing goods or services to a public agency pursuant to contract is not required to comply with chapter 119. Schwab, 596 So.2d at 1031. When analyzing whether a private entity is acting on behalf of a governmental agency for public records purposes, courts have examined a number of factors. The Florida Supreme Court listed the factors frequently used for this analysis: (1) the level of public funding; (2) the comingling-of funds; (3) whether the activity in question was conducted on publicly owned property; (4) whether the services contracted for are an integral part of the agency?s decision-making process; (5) whether the private entity is performing a governmental function or a function which the public agency otherwise would perform; (6) the extent of the public agency’s involvement with, .regulation of, or control over the private entity; (7) whether the private entity was created by the public agency;. (8) whether the public agency has a substantial financial interest in the private entity; and (9) for whose benefit the private entity is functioning. Id, That analytical methodology is referred to as the “totality of factors” or the Schwab test.
Delegation of Function Test
However, “the factor by factor analysis outlined by Schwab is not necessary when the delegation of governmental responsibility is clear, and compelling.” Putnam Cty. Humane Soc., Inc. v. Woodward, 740 So.2d 1238, 1239 (Fla. 5th DCA *122 1999). This court first utilized the “delegation of function” test in Stanfield v. Salvation Army, 695 So.2d 501 (Fla. 5th DCA 1997), finding that where there was a complete assumption of a governmental obligation'by a private entity, the Act would apply to the private entity's documents concerning that governmental function. Id. at 503.
Rather than utilizing the Schwab totality of factors test, the trial court in this case applied only the delegation of function test that was first espoused by this court in Stanfield. In that case, Marion County contracted with the Salvation Army for it to perform all misdemeanor probationary services in place of the county. Stanfield, 695 So.2d at 502. We explained that the Salvation Army “did more than enter in to a contract to provide professional services to Marion County.” Id. “Rather than providing services to the county,- the Salvation Army provided services in place of the county.” Id: The Salvation Army “took over the county’s role as the provider of probation service ... a-complete assumption of a governmental obligation.” Id. at 502-03."
The Florida Supreme Court approved of the delegation of function test in Memorial Hospital-Wed Volusia, Inc. v. News-Journal Corp., 729 So.2d 873, 381 (Fla.1999).
We likewise agree with the Fifth District in this case in noting the' distinction between providing materials' or services to a public body to facilitate the public body’s own performance of its public function and an agreement under which a private actor performs the public function in place of the public body. When the agreement transfers the actual public function, public access follows, as was correctly determined by the Fifth District in its more recent decision in Stanfield v. Salvation Army, in which the district court held that public access was required for -a private entity that completely assumed a governmental .obligation in its contract with a- county government to provide probationary services.
Id. (citations omitted).
Where a local Humane Society investigated claims of animal abuse and seized animals pursuant to statutory authority, it was clearly performing a governmental function, and acting as an agent of the state in doing so. Woodward, 740 So.2d at 1239-40. Given the clear and compelling delegation of a governmental function to a private entity, the delegation of function test could be used in place of the Schwab totality of factors analysis. Id. at 1239. With regard to its investigative and enforcement functions, the Humane Society was subject to the Act. Id at 1240.
In Prison Health Services, Inc. v. Lakeland Ledger Pub. Co., 718 So.2d 204 (Fla. 2d DCA 1998), a private company “entered into, a contract with the Sheriff of Polk County ... to ‘provide total health care services for the irimates/detainees (including federal and state prisoners) housed within the county correctional system facilities.’ ” Id. at 205. Citing Stanfield and using the delegation of functions test, rather than employing the Schwab factors, the Second District Court of Appeal- concluded that the private health dare company was subject to the Act. Id.
In B & S Utilities, Inc, v. Baskerville Donovan, Inc., 988 So.2d 17 (Fla. 1st DCA 2008), the issue was whether a private engineering firm would be subject to public record requirements regarding the role it -played on behalf of the city’s development of a public water system. The City of Apalachieola had no engineer on staff; instead, it had retained and relied upon this engineering firm repeatedly, over a period of fifteen year's to perform both specific and general engineering services *123 on behalf of the city. 988 So.2d at 18-19. No other engineering firm was used in such a manner by the city during that time frame. Id, at 20. After concluding that the private engineering firm acted de facto as city engineer, the First District found it unnecessary to employ the Sdmab factors. Utilizing the delegation of function test, the court determined that there had been a delegation and transfer of an actual public function, the city’s municipal engineering functions, to a private entity; meaning the private engineering firm was acting on behalf of the governmental agency to such an extent that it would be 'classified as an agent and must comply with the Act, Id at 22.
In this case, Brevard County contracted with EDO to serve as the county’s primary, not its sole, agent for economic development activity. The county continued to carry out economic development activities itself through its own paid county employees and in conjunction with other entities to the exclúsion of EDO. Unlike the Salvation Army in Stanfield here EDO did not take over the county’s role' or completely assume'the county’s provision of economic development services. EDO provided services to, not in place of,-the county. Although local governments may engage in a variety of economic development activities, .those .services in our opinion are not traditional governmental obligations or functions like those involved in Stanfield, Woodward Prison Health Services or B & S Utilities. Because there is not a deal’, compelling, complete delegation of a governmental function to EDO, the trial court erred in using the delegation of function test instead of the Sdmab totality of factors test.
Application of the Schwab factors test involves mixed questions of law and fact. Mem’l Hosp.-W. Volusia, Inc., 729 So.2d at 381. Here, there was a two-day eviden-tiary hearing during which several witnesses testified. On appeal, each party has emphasized different testimony from which competing conclusions might be reached concerning the Schwab factors, The trial court who was present during the two-day hearing is in the best position to evaluate the witnesses, their testimony, and any other evidence. Accordingly, we remand the case to the trial court for further analysis utilizing the Schwab totality of factors test and further proceedings consistent with this decision.
We affirm the trial court’s decision to deny Ellis’ motion for attorney’s fees, because attorney’s fees should hot be awarded in those eases where the party refusing to provide documents acted on the good-faith belief that it was not an agent, subject to compliance with the Act. Stem-field 695 So.2d at 803..,.
AFFIRMED in part;- REVERSED in part; and REMANDED.
EVANDER, J., and PERKINS, T.R., Associate Judge, concur.